CITY OF FRIEND V. DANIEL INGERSOLL, ADMINIS-
TRATOR.

FILED MARCH 20, 1894.  No. 5579.

1. **Personal Injuries:** EVIDENCE: TABLES OF EXPECTANCY. In
an action for damages for personal injuries, where such injuries
resulted in the death of the party injured, or are shown to be
permanent, the Carlisle table of expectancy of life is competent
and admissible in evidence as bearing upon and tending to prove
the expectancy of life, but not conclusive of the question, and is
to be received and considered by the jury as any other evidence,
and subject to the same rules as to its weight and sufficiency as
other testimony; and its statements as to expected duration of
life may be varied, strengthened, weakened, or entirely destroyed
by other competent evidence on the question of the expected
continuance of life of the injured party, such as testimony per-
taining to the health of the party at the time of the injury upon
which the action is based.

2. ———: ———: DAMAGES. Where an injured party, by reason
of the injury which is the foundation of the action, has incurred
necessary expenses for medical attendance, nursing, etc., and has
become liable or indebted for the payment of such expenses, the
reasonable and fair valuation of such services may be recovered,
although not yet paid by the party injured.

3. ———: MEDICAL ATTENDANCE: EVIDENCE OF VALUE: REVIEW.
The evidence in the case *held* sufficient to sustain the verdict
generally, but that there was no testimony of the reasonable and
fair value of the services of the physicians, and defendant in
error is allowed to file a remittitur of the sums charged for their
services, and the judgment then to stand affirmed. If the remit-
titur is not filed, the case reversed and remanded.

ERROR from the district court of Saline county.   Tried
below before HASTINGS, J.

*E. E. McGintie, J. D. Pope,* and *Robert Ryan,* for plaint-
iff in error:

The Carlisle tables of expectancy were not competent
evidence.) *Shippen's Appeal,* 2 W. N. C. [Pa.], 468; *Den-*

*man v. Johnston,* 48 N. W. Rep. [Mich.], 567; *Sellars v. Foster,* 27 Neb., 126; *Milton v. State,* 6 Neb., 144; *Ballard v. State,* 19 Neb., 609.)

There can be no recovery for alleged services of physicians and nurses, because there was no evidence of the reasonable and fair value thereof. (*Meredith v. Kennard,* 1 Neb., 319; *Neihardt v. Kilmer,* 12 Neb., 38; *Republican V. R. Co. v. Fink,* 18 Neb., 92; *Ballard v. State,* 19 Neb., 619; *Stough v. Stefani,* 19 Neb., 471; *City of Lincoln v. Holmes,* 20 Neb., 47; *Rosewater v. Hoffman,* 24 Neb., 222; *Mills v. Saunders,* 4 Neb., 194; *Atchison & N. R. Co. v. Baty,* 6 Neb., 37.)

*F. I. Foss* and *W. H. Morris, contra,* contending that the Carlisle tables of expectancy were properly admitted in evidence, cited: *City of Lincoln v. Smith,* 28 Neb., 762.

Harrison, J.

Minerva C. Doxtater, plaintiff in the court below, commenced an action in the district court of Saline county, Nebraska, July 16, 1891, to recover damages of the city of Friend, in said county, for an alleged personal injury sustained by her April 5, 1891, in falling upon the sidewalk of said city, the fall being caused by the defective and unsafe condition of the sidewalk, according to the statements of the petition. In her petition she pleads that Friend was, on the 5th day of April, 1891, a city of the second class, duly organized and incorporated, and in the exercise of its powers constructed a sidewalk on the south side of one of its streets, and further states: "That in building said sidewalk the city was negligent in this, to-wit, that it used poor material, that which was unfit for the building of sidewalks for people to pass over; that said material was rotten and full of knots, and the boards were too wide and not of sufficient thickness to have the necessary strength for people of ordinary weight to walk upon.

And plaintiff says that at the place just mentioned the city did use at one point at or about sixty feet west from the northeast corner of said lot, and put in, a board about twelve inches wide, and about three-fourths of an inch thick, laid upon three stringers, in which was a knot from six to eight inches wide and about a foot and a half to two feet north of the south side of said walk, and which when stepped upon broke, and on account of the breaking of said knot the board became loosened, and was loosened and unfastened from the stringers from the south side of said walk to the north side, and said board was of poor material, rotten, and knotty; that it had been broken, and it was also loose and unfastened from the stringers and unsafe for people to pass to and fro across; that the same had been known to this defendant for more than a month before the 5th of April, 1891.  And plaintiff says that while passing along said sidewalk on the 5th of April, 1891, in company with her daughter, and while passing over said board, to-wit, at a point about sixty feet west from the northeast corner of said lot, without any negligence on her part, or upon the part of her daughter, her daughter stepped upon the board above mentioned, which was in its proper position, but unfastened from the stringers, which fact was unknown to this plaintiff and her daughter, and as the daughter of this plaintiff stepped upon said board, it being unfastened, it flew up, and as this plaintiff stepped forward, not having seen the board fly up, and supposing the sidewalk was all right, her foot caught and she stepped into the hole made by the removal of said board, which was from eight to twelve inches deep, and thereby was thrown down; and plaintiff alleges that by reason of the dangerous and unsafe condition of said sidewalk and of said board she unavoidably fell, and her left limb, hip, and hip joint were thereby broken, sprained, bruised, crushed, and mangled so that said plaintiff became lame and diseased, and has remained lame and diseased ever since the

5th day of April, 1891. And the plaintiff further alleges and charges the truth to be that the said defendant, disregarding its duties in the premises, negligently and carelessly allowed said sidewalk above described to remain in such dangerous condition, and wholly failed, neglected, and refused to repair the same, and make the same safe and secure for the use and purpose for which the same was constructed, to the great damage of persons passing along and over the said sidewalk." Then follows in paragraph 4 of the petition a second statement of the facts, descriptive of the fall and the injury resulting therefrom, and the pain and suffering of the plaintiff and its continuance up to the time of the filing of the petition, and a further allegation of the permanent nature of the injury. Paragraphs 5, 6, and 7 are as follows:

" 5. And plaintiff further says that she has been prevented from attending to her necessary duties and vocation all of said time, and been put to a great deal of trouble and expense, to-wit, amounting to the sum of $3,457.15, as follows:

| | | |
|---|---:|---:|
| Bill of Dr. Hewitt | $96 | 65 |
| Bill of Dr. Watson (assistant) | 10 | 00 |
| Nursing | 144 | 00 |
| Board and washing | 42 | 00 |
| Extra help | 96 | 50 |
| Extra fires, lights, bandages, and cotton | 6 | 00 |
| Loss of time | 62 | 00 |
| Damages for injury | 3,000 | 00 |
| | $3,457 | 15 |

"That all of this has been spent in and about trying to get healed and cured of said injuries, and for expenses attendant thereto.

" 6. And said plaintiff alleges that on the 7th day of July, 1891, this plaintiff duly presented in writing to defendant, the city of Friend, her claim against said defend-

ant, duly verified by the oath of this plaintiff, and demanded payment of the same, and that said defendant then and there refused to pay the same or any part thereof.

"7. And plaintiff says that she has been, up to the time that she sustained the injury aforesaid, a skilled nurse, and that by reason of said injury aforesaid she has, since said 5th day of April, 1891, been a constant burden and care to herself and her friends."

The prayer is for judgment in the sum of $3,500.

The defendant city filed answer as follows:

"And now comes the above named defendant and for answer to the plaintiff's petition herein filed denies that in the building of said sidewalk, as set forth in plaintiff's petition, that said city was negligent; denies that the material used in the construction of said sidewalk was poor; denies that the defendant had any notice, or knew of the defects in said sidewalk, as set forth in plaintiff's petition; and further answering denies each and every other allegation in plaintiff's petition contained."

Of the issues thus formed, on the 18th day of February, 1892, there was a trial to the court and a jury, which resulted in a verdict for the plaintiff in the sum of $1,050. The city filed a motion for a new trial, which was overruled, and judgment was rendered for the plaintiff for the amount fixed by the verdict, and for costs, and the case was brought here by the city on petition in error for our consideration.

The counsel for plaintiff in error, in their brief, first call our attention to the allegations of the plaintiff's petition on the subject of the negligence of the defendant city, and the evidence produced on the trial, directed thereto, quoting quite largely from the testimony, and insist, in an extended and able argument, that the evidence was not sufficient to sustain the verdict, especially when viewed in connection with the statements of the petition. We have examined the petition and conclude that it states a cause of action, founded upon the negligence of the city by its proper offi-

50

cers. We have carefully read all of the evidence contained in the record and are satisfied that although there is a conflict in it on probably every point involved in the question of the negligence of the defendant, yet it is sufficient to support a verdict for plaintiff. It was submitted to the jury for their consideration, on the conflicting evidence, and they have passed upon it as to its weight and sufficiency, and it is not for us to disturb their conclusions, if not manifestly and clearly wrong. Such is the rule of this court often expressed.

On the point of notice to the city, of the defects, there was proof of facts and circumstances sufficient to bring the case within the rule announced in *City of Lincoln v. Smith*, 28 Neb., 762, where it was said by NORVAL, J. (now chief justice): "The rule of law adopted by the courts is that it is not necessary that the authorities of a city should have actual notice that a sidewalk is defective in order to make the city liable. It is sufficient for the plaintiff to prove that the defendant had notice of the defective condition of the sidewalk or establish the existence of facts from which notice would be inferred, or circumstances from which it appears that the defect ought to have been known. (*City of York v. Spellman*, 19 Neb., 383.) There is in the bill of exceptions testimony which tends to establish the fact that the defendant city had both actual and constructive notice of the defective condition of the walk."

The court below allowed parol evidence to be introduced that "a claim such as is in the petition" was presented to the city council by attorney for plaintiff in person. This is assigned as error. Our statute requires all such claims to be verified by the oath of the party claimant, his agent, etc. If error, this could only affect the question of costs. (*City of Crete v. Childs*, 11 Neb., 252), and was not reversible error. To be reviewed here it must have been brought to the attention of the court below, by motion to retax costs and passed upon, and if overruled, then such an action

would be subject to review here if presented by proper record. ( *Wilkinson v. Carter*, 22 Neb., 186.)

The plaintiff offered in evidence the Carlisle tables of expectancy of life, to which the defendant interposed the objection that they were incompetent and irrelevant under the facts proved as to the condition of this woman. This objection was overruled and defendant excepted. There was testimony in the case, by physicians and other persons, from which it might be concluded that the plaintiff was as healthy a woman as any of her age. One of the witnesses was the physician who attended her after and during the time she was suffering from the effects of the injury alleged in this case, and he states that he had known her for about ten years; that about seven years prior to the accident he had performed an operation by which he removed a cancer from her breast; that he had prescribed for her about a couple of years before the accident, and that at the time of the injury her health was good for a woman of her age. On the other hand, it was shown that since the injury the cancer had returned, or was again active and causing Mrs. Doxtater considerable trouble and sickness; that if a person was afflicted with cancer, notwithstanding its removal, there would remain a cancerous or diseased condition of the blood or system and the germ or seed of the cancer exist in the body of the person and a return of the cancer more than probable to occur in the near or remote future. It will be gathered from the above summary or general statement of the substantial purport of the testimony *pro* and *con*, as to the physical condition of Mrs. Doxtater at the time of the injury, that it was one of the disputed elements of the case and upon which the evidence was conflicting,—an inquiry to be determined by the jury, in the same manner as any other disputed fact in the case, from all the testimony introduced bearing upon it and tending o either prove or disprove it; and from this, coupled with other facts, the expectancy of life of the plaintiff ascer-

tained.    Under such an existing condition of the testimony
did the court err in allowing the Carlisle tables of expec-
tancy to be introduced?    This table is almost, if not uni-
versally, admitted in evidence as competent in cases of
damages for death of a person caused by injury or in ac-
tions for damages where death does not ensue, but the in-
jury is shown to be permanent.    The admissibility of the
table should, it seems to us, depend to some, if not to a
great, extent upon what facts enter into it as a table, as its
constituent elements or parts, or, in other words, upon
what facts or upon the lives of what class of persons
were the calculations based or made, and were they cor-
rectly and accurately made?    If the calculations which re-
sulted in the Carlisle tables were predicated upon a particu-
lar or selected class of lives, or of healthy persons alone,
then it cannot be introduced in any case except where the
same kind of a life is involved in the controversy; but if
based upon the general or average of all lives, then it can
be introduced, or is competent in any proper case in which
the expectancy of the life of a party enters as an element of
inquiry, not as conclusive or as specially governing the in-
quiry, but to be considered as any other piece of testimony
and its weight and sufficiency to be determined in the same
manner.

The supreme court of Pennsylvania, in the case of *Stein-
brunner v. Pittsburg & W. R. Co.*, 23 Atl. Rep. [Pa.], 239,
in passing upon the admissibility of testimony of this kind,
held : "In a case where the expectation of life of deceased
is a question for the jury, the Carlisle mortality tables are
admissible in evidence, but are not conclusive; the expec-
tation being affected by the particular circumstances in the
case," and in the body of the opinion stated as follows :
"In estimating the damages for the death of the deceased,
his expectation of life became an element of importance.
His earning power being fixed by the evidence, the next
question to be settled by the jury would naturally be, how

many years will he probably live to exercise this power? This can never be decided accurately in single cases. The most a jury, or any one else, can do is approximate it. A man may die in a day, or he may live to earn wages for twenty years. It follows that there must always be an element of uncertainty in every such case. But there are some rules to be observed which aid to some extent in such investigations. Thus, if a man is in poor health, especially if he is suffering from some organic disease which necessarily tends to shorten life, his expectancy is much less than that of a man in robust health. Again, the age of the person and his habits are among the important matters for consideration. It needs no argument to show that the expectation is much greater at twenty-one years than at fifty. The value of the Carlisle tables in bearing upon this question depends in a measure upon the manner in which they are made up. * * * The evidence in this case is not very clear as to the mode in which these tables were composed. I have therefore consulted the Encyclopædia Britannica, a very high authority, (vol. 13, p. 176), from which I extract the following: 'The Carlisle table was constructed by Mr. Joshua Milne from materials furnished by the labors of Dr. John Heysham. These materials comprised two enumerations of the population of the parishes of St. Mary and St. Cuthbert, Carlisle [England], in 1780 and 1787, (the number in the former year having been 7,677, and in the latter 8,677,) and the abridged bills of mortality of those two parishes for the nine years, 1779 to 1787, during which period the total number of deaths was 1,840. These were very limited data upon which to found a mortality table, but they were manipulated with great care and fidelity. The close agreement of the Carlisle table with other observations, and especially its agreement in a general sense with the experience of assurance companies, won for it a large degree of favor. No other mortality table has been so extensively

employed in the construction of auxiliary tables of all kinds for computing the values of benefits depending upon human life.    Besides those furnished by Mr. Milne, elaborate and useful tables    *    *    *    have been constructed by David Jones, W. T. Thompson, Chisholm, Sang, and others.    The graduation of the Carlisle table is, however, very faulty, and anomalous results appear in the death rates at certain ages.'    It appears, therefore, that the Carlisle table is based upon general population, and not upon selected or insurable lives."

We conclude that in the case at bar the table offered and received was competent evidence, not conclusive but subject to be varied, or modified, or entirely contradicted as to the expectancy of life of plaintiff by any other competent evidence introduced on the same subject, such as proof that she was unhealthy or diseased at the time of the injury, which would certainly tend to weaken and, if strong enough, to destroy the force of the rule for determining such expectancy given in the table.    For the general rule that the table is competent, see the following authorities: Rogers, Expert Testimony, 231, and cases cited in note; Abbott, Trial Brief, 84; Abbott, Trial Evidence, 724; 22 Am. L. Reg., 105, note.

We do not think the instructions on the question of the expectancy of life of plaintiff were nearly as full as they should have been.    In fact it was only covered incidentally in instructions upon other points; but no further instructions were asked on the subject, and, furthermore, we do not think any prejudice to defendant's rights resulted from the lack of further instructions on this subject.    The rule announced in this case does not conflict with the one heretofore given in the cases of *Roose v. Perkins*, 9 Neb., 304; *Sellars v. Foster*, 27 Neb., 118, and *City of Lincoln v. Smith*, *supra*, in all of which the court was only called upon to pass on the question of admissibility of the table in cases where it was either proved beyond contradiction or

admitted that at the time of injury the injured party was a healthy, robust person, and the point raised and decided in this case was not involved and not considered.

Complaint is made of the giving of instruction No. 13, requested by plaintiff, or rather of the use of the two last words in the instruction. It is more than probable that a better choice of words could have been made, but when read, considered, and construed in connection with the other portions of the same instruction and with the instructions in the case taken as a whole, we cannot discover wherein it could have misled the jury.

There was the further assignment of error that Mrs. Doxtater was not entitled to recover for alleged services of physicians and nurses. In this was included two propositions which were argued by counsel for plaintiff in error, one being that there was no proof that Mrs. Doxtater had paid any of these bills, and hence she was not entitled to have them considered as elements of damage or to recover them as such. The evidence shows that they had not been paid, but we understand the rule to be that where expenses of this nature have been incurred and the party has become liable for their payment, they may be recovered although they have not been paid. (3 Sutherland, Damages, 721, and cases cited in note.) The other proposition included in the above assignment of error presented in brief of counsel for the city was that the court erred in giving the following instruction on the subject of the services of physicians, etc.: "If you find for the plaintiff and find from the evidence that the plaintiff has been injured and that it has been necessary for her to procure the services of physicians and nurses, you should allow such sum as would be a reasonable and fair value for such services of physicians and nurses as shown from the evidence were necessary on account of the injury, not exceeding in all $3,500," when there had been no evidence introduced whatever of the reasonable and fair value of the physicians' services. This proposition

is correct; and the giving of the above instruction was error, as there was no testimony in the case in regard to the reasonable and fair value of the services of the physicians upon which to base it or to warrant the court in giving it. "Instructions to a jury must be based on the evidence adduced on the trial." (*Ballard v. State*, 19 Neb., 610.) "It is the fair and reasonable value of services which may be recovered." (Sutherland, Damages, 720, 721, and notes; *Neihardt v. Kilmer*, 12 Neb., 38; *City of Crete v. Childs*, 11 Neb., 253.) The amount of the bill for one physician was $96.65, and of the other $10. The plaintiff may file a remittitur of the above sums within thirty days from this date as of the date of the verdict, and, if done, the case will stand affirmed. If not, it will be reversed and remanded for further proceedings.

JUDGMENT ACCORDINGLY.

POST, J., not sitting.