(July 6, 1917.)

LOUIS CNKOVCH, Respondent, v. SUCCESS MINING COMPANY, a Corporation, Appellant.

[166 Pac. 567.]

MASTER AND SERVANT—INJURIES TO SERVANT—SAFE PLACE TO WORK—INSTRUCTIONS—TRIAL—EXPERIENCE AND KNOWLEDGE OF JUROR—ASSUMPTION OF RISK — CONTRIBUTORY NEGLIGENCE — MORTALITY TABLES—EXCESSIVE DAMAGES.

1. Instructions permitting the jury to use their own experience and knowledge examined, and *held* not to violate the rule that juries cannot take into consideration facts not shown in evidence.

2. Mortality tables are merely an aid to the jury in determining life expectancy and are not conclusive.

---

On right of jurors to act on their own knowledge of the facts in or relevant to the issue, see notes in 31 L. R. A. 489; 37 L. R. A., N. S., 790.

On conclusiveness and effect of tables of expectancy of life, as evidence, see note in 40 L. R. A. 560.

On servant's assumption of risk from latent dangers or defects, see note in 17 L. R. A., N. S., 76.

On excessiveness of verdicts in actions for personal injuries other than death, see comprehensive note in L. R. A. 1915F, 30; specifically as to hernia caused by injury, see page 279 of said note, and as to the injury to the sacro-iliac joint, see page 416 of said note.

3.  Where the jury is fully instructed on the question of assumption of risk, the fact that other instructions advise the jury that contributory negligence will be a bar to recovery but fail to state that assumption of risk will also be a bar, is not prejudicial.

4.  The jury was instructed that "an employee has a right to assume, in the absence of apparent defects, that a place in which he is ordered to work by a shift boss is safe, and he is not bound to inspect it for the purpose of discovering a latent defect. And where an employee is directed to work in a certain place, he has the right, in the absence of proof to the contrary, to assume that the place has been made reasonably safe by his employer." *Held,* that this instruction does not mean that proof would have to be made by the employer that the employee's place of work was safe, irrespective of the employee's knowledge of the dangers or defects thereof, but that it merely states the general rule that the employee has a right to act on the presumption that the employer has made his place of work reasonably safe.

5.  Where, in an action by a miner injured by falling rock, plaintiff did not plead any assurance of safety by his employer, but defendant pleaded that plaintiff was thoroughly familiar with his place of work and with every danger, risk and hazard there present, it was not error to permit plaintiff to testify that defendant's shift boss told him that the ground above him was all right.

6.  Where a miner, working under the directions of a shift boss, is charged with the duty of picking down and removing all dangerous ground around his place of work and he has no means or opportunity to examine any other portion of the stope in which he is working beyond or above his immediate vicinity, he has a right to assume that his employer has inspected or examined that portion of the place not obvious or known to the servant and found it in a reasonably safe condition.

7.  Where, in an action by a servant for personal injuries, the evidence was conflicting as to whether the rock which struck plaintiff came from the block of ore where plaintiff was working, in which case defendant would not be liable, or came from another portion of the stope, and the jury found for the plaintiff, the verdict will not be disturbed.

8.  Plaintiff, an experienced miner, thirty-one years old, earning three and a half dollars a day, suffered injuries consisting of a hernia of the direct variety, injury to the pubic region and injury to the sacro-iliac joint. The sacro-iliac injury was severe and of a permanent nature, preventing any labor requiring exercise. *Held,* that a verdict for $7,500 was not excessive.

[As to duties of mine owners to prevent injuries to employees, see note in 87 **Am. St.** 557.]

APPEAL from the District Court of the First Judicial District, for Shoshone County.    Hon. William W. Woods, Judge.

Action for damages for personal injury.    Judgment for plaintiff.    *Affirmed.*

J. E. Gyde, for Appellant.

"An instruction which leaves the jury free to consider facts not proved by the evidence, but of which they have been informed in some other way, or 'which tells the jury that to determine a fact they must look to the evidence as far as it is clear and unambiguous, is erroneous."    (38 Cyc. 1683, 1684; 1 Blashfield's Instructions to Jurors, sec. 79; *Holt v. Spokane etc. Ry. Co.,* 3 Ida. 703, 35 Pac. 39; *Whitney v. Woodmansee,* 15 Ida. 735, 99 Pac. 968; *Burrows v. Delta T. Co.,* 106 Mich. 582, 64 N. W. 501, 29 L. R. A. 468; *Close v. Samm,* 27 Iowa, 503; *Douglass v. Trask,* 77 Me. 35.)

The result of the giving of respondent's requested instruction No. 7 was to absolutely remove from the consideration of the jury the defense of assumption of risk.    (*Miller v. White Bronze Monument Co.,* 141 Iowa, 701, 18 Ann. Cas. 957, 118 N. W. 518; *Chicago etc. R. Co. v. Heerey,* 203 Ill. 492, 68 N. E. 74; *Johnson v. Mammoth Vein Coal Co.,* 88 Ark. 243, 114 S. W. 722, 123 S. W. 1180, 19 L. R. A., N. S., 646; *Schlemmer v. Buffalo R. & P. R. Co.,* 220 U. S. 590, 596, 31 Sup. Ct. 561, 55 L. ed. 596; *Tuttle v. M. Ry.,* 122 U. S. 189.)

An instruction which concludes with a direction to find in a certain way must include every element necessary to such finding, and cannot be cured by any other instruction.    (1 Blashfield's Instructions to Juries, secs. 78, 80, pp. 170, 176, 177; *Just v. Idaho Canal etc. Co., Ltd.,* 16 Ida. 639, 133 Am. St. 140, 102 Pac. 381; *Portneuf-Marsh etc. Co. v. Portneuf Irr. Co.,* 19 Ida. 483, 114 Pac. 19; *Giffen v. City of Lewiston,* 6 Ida. 231, 55 Pac. 545; *Holt v. Spokane etc. Ry. Co.,* 3 Ida. 703, 35 Pac. 39; *State v. Webb,* 6 Ida. 428, 55 Pac. 892.)

The court seriously erred in its refusal to tell the jury that no assurance of safety was in issue or complained of by plaintiff in his complaint and that no liability could be predicated

thereon. (*Thurman v. Pittsburg & M. Copper Co.*, 41 Mont. 141, 108 Pac. 588, 590; *Minty v. Union Pac. Ry. Co.*, 2 Ida. (471) 437, 21 Pac. 660; *Telle v. Leavenworth R. T. Ry. Co.*, 50 Kan. 455, 31 Pac. 1076; *Cincinnati, I., St. L. & C. Ry. Co. v. McLain*, 148 Ind. 188, 44 N. E. 306; *Antler v. Cox*, 27 Ida. 517, 149 Pac. 731; *Woodward v. Oregon Ry. & Nav. Co.*, 18 Or. 289, 22 Pac. 1076.)

John P. Gray and Walter H. Hanson, for Respondent.

The jury may use their experience in life and knowledge as to the matters referred, first, in determining whether or not the defendant acted as a reasonably prudent person would, and, second, in estimating the loss of earning capacity and fixing his damages. (*Grand Trunk R. Co. v. Ives*, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. ed. 485; *Baillie v. City of Wallace*, 24 Ida. 706, 135 Pac. 850; *Maloney v. Winston Bros. Co.*, 18 Ida. 740, 111 Pac. 1080, 47 L. R. A., N. S., 634; *Walsh v. Winston Bros. Co.*, 18 Ida. 768, 111 Pac. 1090; *Barter v. Stewart Min. Co.*, 24 Ida. 540, 135 Pac. 68; *Chiara v. Stewart Min. Co.*, 24 Ida. 473, 135 Pac. 245; *Denbeigh v. Oregon-Washington etc. R. Co.*, 23 Ida. 663, 132 Pac. 112.)

No court has ever held that it is error for the court to instruct the jury to make use of their experience and general knowledge in their deliberations. (1 Brickwood's Sackett on Instructions, sec. 937; *Reed v. Territory*, 1 Okl. Cr. 481, 129 Am. St. 861, 98 Pac. 583; *Willis v. Lance*, 28 Or. 371, 43 Pac. 384, 487; *Johnson v. Hillstrom*, 37 Minn. 122, 33 N. W. 547; *Sanford v. Gates*, 38 Kan. 405, 16 Pac. 807; *Jenney Electric Co. v. Branham*, 145 Ind. 314, 41 N. E. 448, 33 L. R. A. 395; *Neanow v. Uttech*, 46 Wis. 581, 1 N. W. 221.)

The instructions must all be taken and considered together, and if they, as a whole, state the law applicable to the facts in the case, that is sufficient, and the case should not be reversed. (*Barrow v. B. R. Lewis Lbr. Co.*, 14 Ida. 698, 711, 95 Pac. 682.)

The negligence charged was in not keeping the place reasonably safe and in not having the loose rock so removed that it

would not fall on him. (*Lone Star Lignite Min. Co. v. Caddell* (Tex. Civ.), 134 S. W. 841.)

"The danger from which he was injured was not one of the ordinary risks of his employment." (*Bunker Hill & Sullivan Min. & C. Co. v. Jones*, 130 Fed. 813, 65 C. C. A. 363; *Maloney v. Winston Bros. Co.*, 18 Ida. 740, 111 Pac. 1080, 47 L. R. A., N. S., 634.)

It is the absolute duty of the master to provide a reasonably safe place in which the servant shall work, having regard to the kind of work, and the conditions under which it must necessarily be performed. (*Bunker Hill & Sullivan Min. & C. Co. v. Jones, supra.*)

FLYNN, District Judge.—Respondent obtained judgment against appellant for personal injuries, from which judgment and from an order overruling a motion for a new trial this appeal is taken.

While operating a machine drill in appellant's mine, respondent was struck by falling rock, which, he claimed, came from straight above him and which appellant contended must have come from the block of ore on which he was working. The complaint alleges that respondent was working under the supervision and direction of a shift boss; that it was his duty to perform such work at such place and in such manner as the shift boss directed, and that it was one of the duties of the shift boss to cause such work to be done and timbering to be put in as was necessary to keep and maintain the place where the employees of the appellant were required to work reasonably safe. It is alleged that the stope where respondent was working was a large stope extending upward, and there were no lights therein except respondent's miner's lamp, and no other man was working there to his knowledge; that respondent was unable to tell how far the stope extended upward, and that while he was working therein and deeply engrossed in his work, without any notice or warning, rocks came down from above and struck and injured him. He alleges that he had no notice or knowledge that any rocks could be loosened or dropped down upon him and no warn-

ing that any rocks were to be or would be dropped; that he had no opportunity to investigate or examine the roof or sides above where he was working, and that there were no means by which he could have reached the same; that it was no part of his duty to make inspection thereof. Negligence is predicated on appellant's failure to keep and maintain respondent's place of work in a reasonably safe condition, and in failing to cause any loose rock in said workings to be removed, and in failing to prevent other employees from working where any rock might be loosened and fall upon respondent, and in negligently directing him to work in said place without having taken the above-named precautions.

Appellant denied that it was negligent, alleged respondent's familiarity with the stope in which he was working, and also pleaded contributory negligence, assumption of risk and negligence of a fellow-servant as affirmative defenses.

The evidence was uncontradicted that it was respondent's duty to pick down and remove all dangerous ground around the place where he was working, which was on a bench on the footwall in an old stope. There was evidence tending to show that the rocks, which struck the respondent, could not have come down from any place except the footwall, because the place directly above respondent, on the six hundred foot level, was timbered and the hanging-wall did not incline sufficiently to be above his place of work.

The instructions emphasized the fact that if the rock falling upon the respondent came from the bench or face of ore in the footwall where he was working, or from a place which was within his reach and which by the exercise of reasonable care he could have observed or made safe and not from a point above him and from a place other than the block of ore on which he was drilling, the jury should find for the appellant.

We shall discuss the errors assigned in the order followed in the briefs.

The trial court instructed the jury as follows:

"You fix the standard for reasonable, prudent and cautious men under the circumstances of the case as you find them according to your judgment and experience *of what that class*

*of men do under these circumstances,* and then test the conduct
involved and try it *by that standard,* and neither the judge,
who tries the case, nor any other person, can supply you with
the criterion of judgment by any opinion he may have on that
subject.''

The italicized portion of the above instruction is complained
of because it is said to authorize the jury to use their own
experience as to the requisite standard of care irrespective of
the evidence in the case.   An identical instruction was dis-
cussed and approved by the supreme court of the United
States in *Grand Trunk R. Co. v. Ives,* 144 U. S. 408, 12 Sup.
Ct. 679, 36 L. ed. 485, and we are content to approve the
instruction on that authority.

Instruction No. 16 is as follows:

''If you should find for the plaintiff then, in estimating his
damages, you may take into consideration the extent and char-
acter of his injuries as shown by the evidence; the pain and
suffering which plaintiff has endured by reason thereof; the
loss of earnings caused thereby.   And if you further believe
from the evidence that plaintiff will continue to suffer from
these injuries, then you may consider such future pain and
suffering and any future loss of earning capacity, if any, as
you find will naturally and probably result from such injuries,
and award the plaintiff such compensatory damages as under
all the circumstances of the case you may deem just.   In esti-
mating the loss of earning capacity, if you should determine
from the evidence that plaintiff would be permanently injured,
you may consider the expectancy of plaintiff's life, based upon
the evidence *and upon your own experience and knowledge* as
to such matters.''

Again, in Instruction No. 17, the jury are told that they are
the judges of the credibility of the witnesses and the weight
to be given their testimony, and that ''you have experienced
and observed the affairs of life and it is your duty, if you
shall determine the plaintiff is entitled to damages, under the
instructions of the court in estimating the same, *to use your
own experience and knowledge* as to such matters.''

It is contended that by these two instructions, as well as by the one first above referred to, the jury are authorized to determine the issues by their personal judgment, knowledge of life or experience in addition to or in disregard of the evidence; that thereby they are permitted to consider and rely on facts not proved by the evidence, which may be within their knowledge or experience. The case of *Holt v. Spokane etc. Ry.,* 3 Ida. 703, 35 Pac. 39, is cited, among others, in support of this contention.

The jury must act on the evidence regularly produced in the course of the trial proceedings and cannot act on their personal knowledge of any of the issues in arriving at a verdict. If the instructions quoted infringe upon this rule, they are erroneous. Juries may bring into their deliberations their general knowledge and experience of the ordinary affairs of life, and that they usually do so irrespective of or despite any instructions given to them is a matter of common knowledge. It seems to us that the criterion by which these alleged erroneous instructions are to be tested is whether the jury reasonably could have inferred therefrom that they could or were to use their experience and knowledge in addition to or in disregard of the evidence. We believe that the construction attempted to be placed on these instructions is somewhat strained, and the objections thereto hypercritical, and we therefore hold that the instructions do not violate the rule that the jury are not to take into consideration facts not shown in evidence.

As examples of the extent and limitations of the rule allowing the jury to use their own knowledge, observation and experience, we cite the following: Brickwood's Sackett on Instructions, sec. 937; *Sanford v. Gates,* 38 Kan. 405, 16 Pac. 807; *Springfield Consolidated R. Co. v. Hoeffner,* 175 Ill. 634, 51 N. E. 884; *North Chicago Street R. Co. v. Fitzgibbons,* 180 Ill. 466, 54 N. E. 483; *Willis v. Lance,* 28 Or. 371, 43 Pac. 384, 487; *Johnson v. Hillstrom,* 37 Minn. 122, 33 N. W. 547; *Jacksonville etc. Ry. Co. v. Hooper,* 160 U. S. 514, 16 Sup. Ct. 379, 40 L. ed. 515; *Dunlop v. United States,* 165 U. S. 486, 17 Sup. Ct. 375, 41 L. ed. 799.

During the course of the trial, respondent offered in evidence the life expectancy of one of his age according to the American mortality tables. It is contended that by the foregoing two instructions, the jury were not permitted to base their verdict as to the amount of damages on respondent's life expectancy, as shown by the evidence, but were required to call to their assistance their own experience and knowledge as to such matters, and that from their own experience and knowledge the jury may have concluded that the life expectancy of respondent was far in excess of that shown by the mortality tables.

Mortality tables are framed upon the basis of the average duration of the lives of a great number of persons. They are competent for the purpose of showing the probable length of life of a given person and are merely an aid to the jury but not conclusive. (*Morrison v. McAtee*, 23 Or. 530, 32 Pac. 400; *Vicksburg etc. R. Co. v. Putnam*, 118 U. S. 545, 7 Sup. Ct. 1, 30 L. ed. 257; *Steinbrunner v. Pittsburg & Western Ry. Co.*, 146 Pa. St. 504, 28 Am. St. 806, 23 Atl. 239; *Denman v. Johnston*, 85 Mich. 387, 48 N. W. 565; *City of Friend v. Ingersoll*, 39 Neb. 717, 58 N. W. 281.)

We think that the instruction in question, wherein the jury were told that in estimating the loss of respondent's earning capacity they might consider his life expectancy, "based on the evidence," is not rendered erroneous by the addition of the words "and upon your own experience and knowledge as to such matters."

The third assignment of error relates to the following instruction:

"The dangers and defects must be so obvious and apparent that a reasonably prudent man would have avoided them, in order to charge the workman with contributory negligence or the assumption of the risk. This instruction is to be taken in connection with all the other instructions and the evidence in the case."

This instruction is said not even to correctly state the law as to contributory negligence, but inasmuch as the law of contributory negligence was elsewhere in the instructions

fully and fairly defined, and inasmuch as appellant concentrates its attack on this instruction as to its unsoundness on the question of assumption of risk, we likewise shall limit ourselves to that phase of the argument. In this connection may also be considered the objection to Instruction No. 10, which is as follows:

"If you find that there was negligence on the part of the master in failing to provide a safe place for the plaintiff to work, or by failing to properly protect the plaintiff· from ground which was loose and liable to fall, which by a reasonable inspection defendant could have known was loose and liable to fall or cave, and that plaintiff's injury was caused by that neglect in the manner alleged in his complaint and not contributed to by any actions on the plaintiff's part, then you should find for the plaintiff."

It is urged that in each of these instructions the trial court failed to distinguish between contributory negligence and assumption of risk, and that in each instruction the defense of assumption of risk was removed from the consideration of the jury.

In the note to the case of *Low v. Clear Creek Coal Co.,* found in 23 Am. & Eng. Ann. Cas., on p. 587, are gathered cases relating to contributory negligence of miners injured by falling rocks; and in connection with the first of the foregoing two instructions, it may not be amiss to call attention to the closing words of the quotation from the case of *Union Pac. R. R. Co. v. Jarvi,* 53 Fed. 65, 3 C. C. A. 433, to wit:

"Dangers, not defects merely, must have been so obvious and threatening that a reasonably prudent man would have avoided them in order to charge the servant with contributory negligence."

Even though these two instructions might be open to the objections urged, in view of the fact that the jury were explicitly and fully advised by Instructions 9, 8–A and 3–A as to the dangers, risks and hazards assumed by plaintiff and the effect of such assumption of risk on his right to recover, we hold that there is no prejudicial error in these instructions.

The next error assigned is directed to Instruction No. 8, which is as follows:

"An employee has a right to assume, in the absence of apparent defects, that a place in which he is ordered to work by a shift boss is safe and he is not bound to inspect it for the purpose of discovering a latent defect. And where employee is directed to work in a certain place, *he has a right in the absence of proof to the contrary,* to assume that the place had been made reasonably safe by his employer."

Objection is made to the italicized portion thereof. We do not think that this instruction can be construed to mean that actual or constructive knowledge by the employee of dangers or defects in his place of work would be immaterial, and that it would still be necessary that proof be made by his employer that the place was safe. "Proof" may be defined as the effect or result of evidence; and, taking such definition in connection with the remaining portion of the instruction, we think that the instruction in effect merely states that the employee has a right to act on the presumption that the employer has made his place of work reasonably safe, which is the rule supported by the authorities. (*Maloney v. Winston Bros. Co.,* 18 Ida. 740, 111 Pac. 1080, 47 L. R. A., N. S., 634; *Barter v. Stewart M. Co.,* 24 Ida. 540, 135 Pac. 68; *Bunker Hill etc. M. Co. v. Jones,* 130 Fed. 813, 65 C. C. A. 363; *Texas & Pac. Ry. Co. v. Swearington,* 196 U. S. 51, 25 Sup. Ct. 164, 49 L. ed. 392.)

Error is assigned to the action of the court in overruling the objection made to the question asked the respondent, namely: "Q. Tell the jury what Barney told you to do," and in refusing to strike a portion of his answer where he testified that Barney told him the ground was all right; and to the action of the court in refusing to give appellant's requested instruction as follows:

"You are instructed that in his complaint the plaintiff makes no claim that the defendant was negligent in making any assurances of safety to him, and, therefore, in your deliberations in this case you should not consider any alleged state-

ment by the shift boss, Barney, to plaintiff, to the effect that the ground or condition above plaintiff was all right.''

The theory on which these rulings are claimed to be erroneous is that there was no assurance of safety pleaded, and that the testimony was therefore irrelevant and immaterial, and that any false assurance of safety made to an employee constitutes a wholly separate and distinct ground of negligence and liability.

From the record we believe it clearly appears that it was the duty of the respondent to do such work and in such manner as appellant's shift boss directed; that it was the respondent's duty to bar down and make safe the ground where he was working; that it was not part of his business or duty to inspect the part of the stope above him, which could not be seen by the aid of his miner's lamp and which could not be examined by any means provided.

The appellant pleaded assumption of risk and that respondent was familiar with every danger, risk and hazard present at his place of work, and that he was familiar with and well knew his place of work and the stope in which he was working, and that he knew and was familiar with the walls, roof and sides of the stope and with the ground at and in the vicinity of his place of work.

It was not error to permit him to negative assumption of risk and notice of dangers, and the testimony was admissible for this purpose, even though no negligence was charged on the question of assurances of safety.

Summarizing the issues in this case, it may be stated that the first issue was: What were the duties of the shift boss and the miner? We believe that the case of *Maloney v. Winston Bros. Co., supra,* is so similar in principle to the case at bar on this question that it will be unnecessary to reiterate the ideas of the court on the question of the master's duty to furnish the servant with a safe place to work, or on the question of whether or not the shift boss was a fellow-servant. The evidence supports the allegations of the complaint as outlined in the opening paragraph of this opinion in respect of the duty of respondent to follow the directions of the shift

boss and the duty of the master, represented by the shift boss, to protect him from dangers not apparent or necessarily incident to the work at which he was engaged.

The second important issue was whether the rock which struck the respondent came from the place on which he was working or from above him. The jury were clearly instructed that if they found that he was struck by a rock coming from the block of ore on which he was working, he could not recover; and the jury found these issues in favor of the respondent. The evidence was conflicting and the verdict will not be disturbed.

The remaining issue was the extent of the injuries and the amount of damages to which respondent was entitled. The verdict is claimed to be excessive. Respondent was an experienced miner, thirty-one years of age, earning at the time of his injury three dollars and a half a day, with a life expectancy of thirty-four years. There was evidence that he was suffering from a hernia of the direct variety, which is practically always caused by some blow or severe strain. The main injury claimed, however, was to the sacro-iliac joint. The sacro-iliac joint is described by one of the witnesses as "a double wedge-shaped joint; the two hip bones slip down in the wedge from side to side and they are beveled in a wedge shape, front and backward. The lower end of the spinal column or backbone is made solid by, you might say, the fusing together of the sacral vertebrae; thus the individual bones in the sacrum are united together, forming one bone. This wedge or sacrum is held in position between the two hip bones by ligaments, muscles and fibrous tissues, nothing else holds them together. If all the soft tissue is removed from around this joint, there is nothing to retain the bone in position at all, no socket or anything like that. This joint has a limited range of motion, and whenever strain is thrown upon this joint, if the ligaments which are binding these bones together are injured, it produces pain the same as a sprained wrist. There is a tearing of the fascia and ligaments surrounding it. And in this particular case that is what we have to deal with,

that is, any injury to these ligaments and fascia surrounding the sacro-iliac joints.''

There was also testimony that the pubic region in front was injured; that the sacro-iliac injury to the respondent was very severe and was of a permanent nature, and that respondent would never be able to do any labor which required any exercise whatever. The jury found on this issue in favor of the respondent, and we, being of the opinion that the amount awarded, to wit, $7,500, is not excessive, the verdict will not be disturbed. The judgment will therefore be affirmed. Costs awarded to respondent.

Budge, C. J., and Rice, J., concur.