## SINCLAIR PRAIRIE OIL CO. v. THORNLEY et al.

## HALLIBURTON OIL WELL CEMENTING CO. v. THORNLEY.

Nos. 2372, 2373.

Circuit Court of Appeals, Tenth Circuit.

March 23, 1942.

130

Charles E. France, of Oklahoma City, Okl., and W. H. McBrayer, of Tulsa, Okl. (Edward H. Chandler and Summers Hardy, both of Tulsa, Okl., and John H. Miley and Miley, Hoffman, Williams, France & Johnson, all of Oklahoma City, Okl., on the brief), for appellant Sinclair Prairie Oil Co.

Philip N. Landa, of Tulsa, Okl. (Hal Crouch and Chris L. Rhodes, both of Tulsa, Okl., and A. G. Crowe, of Oklahoma City, Okl., on the brief), for appellant Halliburton Oil Well Cementing Co.

V. P. Crowe, of Oklahoma City, Okl. (John Embry, Charles Edward Johnson, and Raymond A. Tolbert, all of Oklahoma City, Okl., and Thomas J. McMahon, of Abilene, Tex., on the brief), for appellee Ludie W. Thornley.

Claude Monnet, of Oklahoma City, Okl. (Mart Brown, of Oklahoma City, Okl., on the brief), for appellee A. D. Engle.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

Sinclair Prairie Oil Company[1] entered into a written contract with A. D. Engle,[2] an independent contractor, in which he agreed to deepen Sinclair's Deatherage No. 1 oil well from 4,186 feet to a depth of 4,360 feet. The contract provided that Sinclair had no direction or control over Engle's employees except in the result to be obtained, and that the work was to be done in a manner to be finally approved by Sinclair. Engle agreed to carry workmen's compensation, employers' and public liability insurance, and to assume responsibility for all such claims, and to hold Sinclair free, clear, and harmless therefrom. The well had been producing a small quantity of oil and approximately 5,000 cubic feet of gas. This gas was vented into the air through a two-inch line attached to the casinghead. The tubing through which the oil was pumped had been removed before the work began. Whatever oil came from the sand was allowed to accumulate in the well, but this was bailed out before the deepening operations began. A belt hall extended south from the well for approximately fifty feet, and opened into an engine house which extended south for another thirty-six feet.

After the contract depth was reached, it became necessary to underream the hole in order to lower the pipe. Sinclair employed the Tripplehorn Casing Crew, an independent contractor, to pull the casing. After the underreaming operation was completed by Engle, the Tripplehorn Casing Crew lowered the five-inch pipe within a few feet of the bottom of the hole. After this, Sinclair decided to circulate and aquajell the well. It employed the Halliburton Oil Well Cementing Company[3] to do this work. While the well was being circulated and aquajelled, an explosion of gas escaping from the well occurred, which caused

---

[1] Herein called Sinclair.
[2] Herein called Engle.

[3] Herein called Halliburton.

the death of C. D. Thornley, an employee of Engle.

The original action was instituted by Ludie W. Thornley, administratrix of the estate of C. D. Thornley, deceased,[4] against Sinclair, Halliburton and Engle, in the District Court of Oklahoma County, Oklahoma. Appellee dismissed as to Engle, whereupon the cause was removed to the federal court by Sinclair. After the case was removed, Engle was brought back in by a third party complaint filed by Sinclair.

In substance the petition alleged that Thornley's injuries resulted from the joint and concurrent negligence of the defendants and each of them in failing to provide a reasonably safe place in which to work and in failing to keep the premises reasonably safe for work. Sinclair denied negligence on its part and plead affirmatively contributory negligence and assumption of risk by Thornley. As against Engle, Sinclair asked that if judgment be rendered against it, it have judgment over against him for a like amount. Halliburton denied liability and affirmatively plead contributory negligence on the part of Thornley. The appeal in No. 2372 is by Sinclair and in No. 2373 by Halliburton, from a judgment in favor of Appellee.

### Number 2372.

Engle had two drilling crews working twelve hours each. Each crew consisted of a driller and an assistant. Thornley was the driller on one of the crews. Engle had deepened Deatherage No. 3 for Sinclair prior to his work on No. 1. Thornley had worked on that well. The machinery and equipment used on Well No. 3 was moved to No. 1. Along with other equipment, a gas heating stove was moved to No. 1. Gas was supplied from a fuel line running to the engine. This stove was placed in the engine house and was used by the employees to keep warm. The stove was turned on and off as needed throughout the various operations. It was used not only by Engle's employees but also by the employees of Halliburton.

The object of circulating a well is to force the fluid in the well to the surface. This is accomplished by pumping water into the well. This causes the fluid in the well to be forced out between the 5½- and the 8-inch casing, thus forcing it to the top of the well. As water is forced into the well, it causes a return of the gas first, the oil second, the water already in the well third, and, lastly, the water that is pumped into the well. The amount of water required is determined by the history of the well. All this information was in the possession of Sinclair.

The well started to circulate, with the result that gas and oil accumulated in the cellar under it and around the derrick of the well. The gas from the well came in contact with the flame in the stove, with the resultant explosion which caused Thornley's death.

Sinclair predicates error on the refusal of the court to sustain its motion for a directed verdict. Sinclair was required to furnish a place that was reasonably safe for the activities and operations contemplated. Cudahy Packing Co. v. Luyben, 8 Cir., 9 F.2d 32; Kaw Boiler Works v. Frymyer, 100 Okl. 81, 227 P. 453; Lisle et al. v. Anderson, 61 Okl. 68, 159 P. 278, L.R.A.1917A, 128. Weger, its district superintendent, was present throughout most of the operations. He was there at all times during the operations carried on by Halliburton, and exercised some supervision and control over the processes of circulating and aquajelling the well. He determined the amount of water and aquajell to be put into the well. He knew that the well was making some gas and that the connections through which the gas was carried into the air had been removed. He saw the burning stove and its proximity to the well and knew that if the well began to circulate, gas would flow around the well. Under all these circumstances, the question of Sinclair's negligence in failing to use ordinary care to protect deceased was properly submitted to the jury. Its finding was not without support of substantial evidence.

Exception is taken to the instruction of the court defining negligence. The court instructed the jury that:

"A common definition of negligence is that it consists of the failure to do what a person of ordinary prudence and care would do under the circumstances of a particular or given situation, or in doing something which such a person would not have done under those circumstances. The acts of a person under certain circumstances might not be negligence, while they would be under other and different circumstances. You,

[4] Herein called Appellee.

as the jury, must fix the standard for reasonable, prudent and cautious men under the evidence and circumstances of this case as you find them according to your best judgment and experience of what that class of men would do under those circumstances, and then test the conduct involved here and try it by your standards, and that is your sole duty in regard to which even the court cannot advise you further in the way of setting up a criterion of opinion."

Sinclair contends that the court should have told the jury that the test was the care usually exercised under similar circumstances by an ordinarily prudent person engaged in the same kind of business. This is substantially what the court did. That part of the court's instruction which refers to what a person "would do under the circumstances of a particular or given situation," and in which the court tells the jury to use its best judgment and experience of what "that class of men" would do under those circumstances, fairly interpreted, could mean only what a reasonably prudent person, engaged in circulating and aquajelling a well under the conditions existing here, would do. Further criticism is leveled at that part of the instruction in which the court said:

"You, as the jury, must fix the standard for reasonable, prudent and cautious men under the evidence and circumstances of this case as you find them according to your best judgment and experience of what that class of men would do under those circumstances, and then test the conduct involved here and try it by your standards, * * *."

This criticism is without merit. What the court told the jury in substance, was that they must, according to their best judgment, determine the standard for reasonable, prudent and cautious men from the evidence in the case and then apply that test or standard to the conduct of the parties in the case in determining the question of negligence. Similar instructions have been approved in a number of cases. See Grand Trunk Ry. Co. v. Ives, 144 U.S. 408, 12 S.Ct. 679, 36 L.Ed. 485; Cnkovch v. Success Mining Co., 30 Idaho 623, 166 P. 567.

■ Objection is also made to the court's instruction on contributory negligence. The court instructed the jury that:

"If you find any defendant, under the standards I have outlined, has been guilty of negligence to your satisfaction, then it will be your duty to go further and ascertain whether or not plaintiff's intestate was himself guilty of any contributory negligence, *that is, contributed to the negligence of that defendant which brought about the injury and the damages which were sustained."*

The objection to the italicized portion of the instruction is that it presupposes only one act of negligence, and that both parties must have been guilty of the same act, whereas the true rule as declared by the Oklahoma Supreme Court presupposes two separate acts of negligence contributing to the injury, one the act of the plaintiff and the other that of the defendant. We do not so interpret the court's instruction. What the court said was that if plaintiff was guilty of contributory negligence, which contributed to or which "added to" the negligence of defendant and resulted in injury, he may not recover. Neither do we understand the true rule to be that there must be two separate acts of negligence. The test is whether the act of negligence on the part of plaintiff contributed to his injury. If it does, he is barred from recovering, irrespective of whether he acted separately or together with the defendant.

■ Sinclair furnished Engle with a braden head to be used in his operations. It had with it packing rings which, when properly installed, sealed the opening between the two strings of casing so that no gas could escape from the well. The braden head also had openings in the side for the insertion of tubes or pipes to conduct gas that came to the top to a place of safety. The braden head furnished by Sinclair had the rings with it, but had no connections necessary to conduct any gas from the well. Thornley helped to install the braden head. The packing rings were not attached before the drilling operations began. But the testimony is that rings could not be attached while the casing is run; that ordinarily they are attached when the well is completed and the casing is set. Neither was it necessarily dangerous to burn the stove while the drilling operations were in progress. That likewise become a menace only when gas was escaping from the well. While Thornley was an experienced driller, there is no evidence in the record that he was experienced in or understood the process of circulating a well. Under all the circumstances, the question of Thornley's contributory negligence was properly submitted to the jury for determination.

It is doubtful if the doctrine of assumption of risk is applicable in this case. The defense of assumption of risk is not available in Oklahoma between parties not in a contractual relationship. Chicago, R. I. & P. Ry. Co. v. Rogers, 60 Okl. 249, 159 P. 1132; Teeters v. Frost, 145 Okl. 273, 292 P. 356, 71 A.L.R. 179. There was no contractual relationship between Thornley and Sinclair; he was the employee of Engle. Circulating the well was no part of his employment. Taking the view most favorable to Sinclair, whether he assumed the risk raised at most a question of fact. That question was submitted to the jury for its determination under an instruction which we think is sufficient, and the issue was resolved against it.

Sinclair interprets the provision of Engle's contract in which he agreed to carry workmen's compensation *and to assume the responsibility for all such claims and to hold and save Sinclair free, clear and harmless therefrom,* to mean that Engle would become liable over to Sinclair for any liability attaching to it even if such liability arose from its own negligence under any of the operations of either Engle or Halliburton. An indemnity contract will not be construed as indemnifying one against his own negligence unless such a construction is required by clear and explicit language of the contract. Doughnut Mach. Corp. v. Bibbey, 1 Cir., 65 F.2d 634; North American Ry. Const. Co. v. Cincinnati Traction Co., 7 Cir., 172 F. 214; Thompson-Starrett Co., Inc., v. Otis Elevator Co., 271 N.Y. 36, 2 N.E.2d 35. Here the parties contracted for the deepening of a well. The contractor was required to carry various kinds of protective insurance. He then agreed to assume liability for all such claims, that is, claims for workmen's compensation, employers' and public liability, and to hold the company free, clear and harmless from such claims. This is a provision generally found in such contracts, and the natural import thereof is that the contractor will so carry on his operation that no liability therefrom will attach to the other party. We can read nothing into the contract that would require Engle to indemnify Sinclair against liability from its own negligence unless negligence on the part of Engle concurred with the negligence of Sinclair.

Whether Engle was guilty of negligence which concurred with the negligence of Sinclair and proximately caused the injury raised a question of fact to be determined by the jury. While the question was not submitted to the jury in that form, it was indirectly submitted by submitting the question whether Engle was liable to Thornley. The jury absolved Engle from liability to Thornley. Absolving him from negligence which would make him liable to Thornley likewise absolved him from negligence concurring with that of Sinclair.

Number 2373.

Halliburton likewise complains of the court's refusal to instruct the jury to return a verdict for it. As stated, Halliburton was employed to circulate and aquajell the well. This was a highly specialized work, performed under certain patent rights. Its employees were fully conversant with conditions as they existed at the well. They knew the casing was open, that the braden head rings were not packed, that the fire was burning in the stove. While Halliburton had no part in preparing the well for the operation, otherwise than setting up its equipment, that did not justify it in proceeding with the operation under conditions hazardous to life and limb. It could not avoid its responsibility because it had no part in equipping the well. The question of its liability was properly submitted to the jury.

It is contended that the equipment and the two employees of Halliburton were hired to Sinclair under such circumstances that they became employees of Sinclair, and that Halliburton therefore is not liable for their negligence. This position is not sustained by the testimony. It is also contrary to the position taken by Halliburton in its answer, wherein it asserted that it was an independent contractor or invitee.

Other assignments of error dealing with assumption of risk, contributory negligence, and error in instructions, are urged. These have all been discussed in Case No. 2372 and no useful purpose would be served by reiterating what was said there.

The judgment in both No. 2372, Sinclair Prairie Oil Company v. Thornley et al., and in No. 2373, Halliburton Oil Well Cementing Co. v. Thornley, is affirmed.