J. W. HUNTER v. SOUTHERN RAILWAY COMPANY.

(Filed 27 May, 1910.)

1. **Negligence—Explosives—Noises—Injurious Effects—Notice.**

In an action for damages alleged to have been caused to plaintiff's intestate, there was evidence tending to show that the intestate was the wife of plaintiff, in delicate health, and that the blasting necessary in constructing defendant's railroad on the other side of the river from plaintiff's residence was done in such unusual manner as to cause stones to be thrown across the river on plaintiff's premises, and the noise and the falling stones kept the intestate in such fear and anxiety that, being in delicate health, it eventually caused her death, notice of which was repeatedly given defendant and utterly disregarded: *Held*, in this connection, the noise, alone, caused by the necessary blasting would not be negligence.

2. **Principal and Agent—Independent Contractor—Negligence—Explosives—Necessary Methods—Owner's Liability.**

The defendant railroad company cannot avoid the payment of damages caused to the deceased, the wife of plaintiff, a woman then in delicate health, by explosions in blasting a way for defendant's railroad near her dwelling, after notice, by setting up the defense that the work was done by an independent contractor, it appearing that defendant had commenced the work and carried it on in the manner indicated, and that the contractor carried it on in like manner, and that was the only way in which it could be accomplished.

3. **Husband and Wife—Negligence—Death of Wife—Executors and Administrators.**

A husband as administrator may sue for damages for the wrongful death of his wife caused by tortious acts of another.

4. **Negligence—Notice—Particular Consequences—Damages.**

The defendant cannot escape liability for the death of another proximately caused by its own tortious acts, after being notified to desist, because the result in the particular form of injury was not foreseen.

APPEAL from *Justice, J.,* at March Term, 1910, of BUN-COMBE.

The plaintiff, as administrator of his wife, brought this action to recover damages for the death of his wife, and alleged that:

"4. During the spring and summer of 1906 the defendant railroad company did willfully, wantonly and in a grossly negligent manner, and in utter disregard of the rights of the plaintiff's intestate, carry on and conduct its blasting operations across the French Broad River from where the plaintiff's intestate lived, and did use excessively large charges of explosives, and did wantonly, willfully, negligently and carelessly fail to take proper precautions to prevent throwing of rocks by the explosions of the blasts around and about the home of the plaintiff's intestate.

"5. The plaintiff in this case, James W. Hunter, who was at the time of the acts and negligence complained of the husband of the plaintiff's intestate, notified the defendant, its agents and servants, of the dangerous and negligent manner in which they and the defendant were conducting the said blasting operations, and the said defendant, its agents and servants, were requested by the said James W. Hunter to use proper care in such operations, that his intestate was in a delicate state of health, and that such reckless and dangerous blasting so near her home would probably inflict upon her serious injury, and might cause her death; that the defendant railway company, through its agents and servants, replied to the said James W. Hunter, on being notified, that they, the said agents and servants of the defendant, had been instructed to 'tear hell out of the side of that mountain,' and that they intended to do it, regardless of consequences; and thereafter the said blasting was continued in the same negligent manner as before.

"6. On account of the negligence of the defendant, its agents and servants, as hereinbefore set forth, the health of the plaintiff's intestate was destroyed, and her nervous system was so shocked and wounded that she became seriously ill therefrom and died—all of which was caused by the acts and negligence of the defendant, its agents and servants, as hereinbefore set forth."

The defendant, after denying the imputed acts of negligence, for a further defense pleaded that this defendant, Southern Railway Company, on the .. day of June, 1906, made and entered into a written contract with Timothy Shea to construct a roadbed for extension of certain tracks at Alexander, N. C., and that said contract was in all respects a lawful one, which the parties thereto might lawfully make and perform; that the work of constructing a roadbed of the character and nature the

said Timothy Shea was employed by this defendant to make was an independent avocation, calling or business in which the said Timothy Shea was and had for many years previously been engaged, and for the exercise of which he had and owned all of the necessary means and appliances; that this defendant, under said contract, was neither principal nor master, nor did it reserve any general or special control over said Timothy Shea either in respect of the manner of performance of said contract by him or in respect of the agents to be employed by the said Shea in doing said work, nor did this defendant, before the commencement of said contract by the said Shea heretofore mentioned, or at the commencement of the same, or at any time during the progress of its performance, assume or in any manner attempt to assume control of the said Shea or the said work or any of the workmen engaged upon the said work or in any other respect whatever; that the said Shea was neither the agent nor the servant of this defendant, but was an independent contractor, taking said work as a job and as a whole, for a definite, fixed, agreed sum, and this defendant was only interested in the result of the work and not in any way in the means employed by the said Shea in its performance; that in making said contract with said Shea, by which he agreed and contracted to do the work of constructing a road-bed for the extension of certain tracks at Alexander, N. C., this defendant ascertained that the said Shea was a man of experience in the kind and character of work which by said contract he bound himself to perform, and he was in every way thoroughly competent and skilled, and this defendant knew when it employed the said Shea that he, for a long time, had been engaged in the performance of such work, and this defendant, before making and signing said contract, made due inquiries as to the capacity and reliability of the said Shea in respect of such work, and ascertained that he was both capable and trustworthy, and this defendant is advised, informed and believes that the said blasting mentioned in the plaintiff's complaint was the blasting done by the said Shea and his employees and subcontractors, while engaged in doing the work set out in the contract made between this defendant and the said Timothy Shea. This defendant never authorized the said Timothy Shea or any one else to resort to blasting in constructing the road-bed for the extension of the tracks at Alexander, or to use powder, dynamite or any other unlawful agency in the performance of said work.

The following issues were submitted to the jury, who answered them as set out:

1. Was the death of plaintiff's intestate caused by the negligence of the defendant Southern Railway Company, as alleged in the complaint? Answer: Yes.

2. What damages, if any, is plaintiff entitled to recover of defendant Southern Railway Company? Answer: $2,000.

Judgment was rendered for the plaintiff, and defendant appealed to this Court.

*Craig, Martin & Thomason, Frank Carter* and *H. C. Chedester* for plaintiff.
*Moore & Rollins* for defendant.

MANNING, J., after stating the case: In view of the verdict of the jury rendered under the charge of his Honor, the following facts are established by the evidence: That in the month of April or May, 1906, the defendant, desiring to widen its roadbed at or near Alexander, in Buncombe County, and lay additional tracks or straighten its existing tracks then used and having been used for many years, found it necessary to blast out a perpendicular cliff of rock about 400 feet long and 42 feet high at its greatest height, situate on its right of way, and began the work of blasting down the cliff by its own employees. This continued two or three weeks. The plaintiff lived across the French Broad River with his wife and two small children, in the corporate limits of Alexander and a quarter of a mile from the blasting. The results of defendant's operations were to throw rocks of large and small size across the river in plaintiff's yard, on his house and buildings, in his garden and field, and the blasting was of such violence that the window-glass in plaintiff's house was shaken out and his wife much frightened and rendered very nervous. The plaintiff made frequent complaints, but to no avail.

· The defendant suspended operations by its own employees, and in June, 1906, made a contract with one Timothy Shea to continue the work and complete it according to certain plans and specifications. He soon thereafter began work, and conducted it in the same manner as the defendant had done, and he and his foreman and other witnesses, offered by the defendant, testified that the work could be done in no other way. The results, in so far as it affected the plaintiff's wife and his premises, were the same; rocks were constantly thrown with great force in and around his house. In the latter part of August plaintiff's wife was taken with typhoid fever; the violent blasting continued with its results. The effect upon plaintiff's wife was that she was kept in a highly nervous condition; that her condition was made known to the foreman in charge,

and the effect of the blasting and falling rock upon her. That the blasting continued up to three or four days before her death.

The physician testified that, in his opinion, but for the blasting and the nervous condition and alarm produced by it upon Mrs. Hunter, she would have recovered.

After making several efforts to have the blasting stopped, the plaintiff succeeded, with a threat of suit, on Thursday or Friday before his wife's death on the following Monday night, 11 September, 1906. This action was begun 4 October, 1906.

The liability of the defendant was presented to the jury in this language, given substantially in accordance with one of the prayers of the defendant: "The court charges you that the act of blasting, as a means of excavation of a railroad in North Carolina, is not in itself negligence; that it is the recognized method of clearing the way of the railroad track, and the simple fact of the blasting making noise is not negligence, for that is the natural result of blasting. So that this, aside from the fact that rocks were thrown, if you find from the greater weight of the evidence that they were thrown in the yard of the plaintiff, the court charges you that the noise of the blasting would not be negligence unless you find that after the contractor was notified of the sickness of Mrs. Hunter, that he willfully and wantonly and negligently continued the blasting, that the simple act of blasting would not be negligence, and if the result of it was to produce death, even, the simple noise, disassociated from the fact that if they had thrown any rocks in the yard, had produced her death, that would not be negligence for which the defendant would be liable, unless, as I say, it was done negligently, willfully and wantonly, after notice on the part of the contractor."

The defendant, however, contended that the vital error committed by his Honor was his failure to give the following instruction: "The court charges the jury that under the terms of the contract introduced in evidence, between the defendant Southern Railway Company and one Timothy Shea, the relation of master and servant did not arise between them, but that the said Timothy Shea, under said contract, was an independent contractor, and anything done by said Timothy Shea under said contract, he was responsible for, and not the Southern Railway Company."

His Honor held, and so charged the jury, that the contract created Timothy Shea an independent contractor, but declined to hold that that fact alone exonerated the defendant from liability to the plaintiff.

In *Young v. Lumber Co.,* 147 N. C., 26, *Mr. Justice Connor,* speaking for the Court, said: "When the contract is for something that may be lawfully done, and it is proper in its terms, and there has been no negligence in selecting a suitable person in respect to it, and no general control is reserved, either in respect to the manner of doing the work or the agents to be employed in doing it, and the person for whom the work is to be done is interested only in the ultimate result of the work, and not in the several steps as it progresses, the latter is not liable to third persons for the negligence of the contractor as his master." This is quoted with approval in *Gay v. Lumber Co.,* 148 N. C., 336, from the opinion of *Mr. Justice Walker* in *Craft v. Lumber Co.,* 132 N. C., 157, and expresses with clearness the general doctrine. In both these cases, however, the exceptions are recognized as well settled which impose liability upon the proprietor or owner for the acts of the independent contractor. In *Young v. Lumber Co., supra,* it is said: "It is conceded that, upon grounds of public policy, certain exceptions are made by the law to the general rule. The one upon which plaintiff relies is well stated by *Andrews, C. J.,* in *Engel v. Eureka Club,* 137 N. Y., 100: 'Where the thing contracted to be done is necessarily attended with danger, however skillfully and carefully performed, or is intrinsically dangerous, it is held that the party who lets the contract to do the act cannot thereby escape responsibility from any injury resulting from its execution, although the act to be performed may be lawful. But if the act to be done may be safely done in the exercise of due care, although, in the absence of such care, injurious consequences to third persons would be likely to result, then the contractor alone is liable, provided it was his duty under the contract to exercise due care.' "

In *Davis v. Summerfield,* 133 N. C., 325, the Court, speaking through *Mr. Justice Montgomery,* says: "There is yet another class of cases where there is an exception to the exemption, and that is where the thing contracted to be done is necessarily attended with danger, however skillfully and carefully performed, said by *Judge Dillon* to be 'intrinsically dangerous.' There the employer cannot escape liability for an injury resulting from the doing of the work, although the act performed might be lawful."

These rules of the liability of the owner or proprietor for the acts of the independent contractor are stated in 2 Cooley on Torts (3 Ed.), p. 1090: "1. If a contractor faithfully performs his contract, and the third person is injured by the contractor in the course of its due performance, or by its result,

the employer is liable, for he causes the precise act to be done which occasions the injury; but for the negligence of the contractor not done *under* the contract, but in violation of it, the employer is, in general, not liable. 2. If I employ a contractor to do a job of work for me which, in the progress of its execution, obviously exposes others to unusual perils, I ought, I think, to be responsible on the same principle as in the last case, for I cause acts to be done which naturally expose others to injury. 3. If I employ as contractor a person incompetent or untrustworthy, I may be liable for injuries done to third persons by his carelessness in the execution of his contract. 4. The employer may be guilty of personal neglect, connecting itself with the negligence of the contractor in such manner as to render both liable." *Lawrence v. Shipman,* 39 Conn., 586; 1 Thompson on Negligence, secs. 652, 771; *Wetherbee v. Partridge,* 175 Mass., 185; *Tiffin v. McCormack,* 34 Ohio St., 638; *R. R. v. Morey,* 47 Ohio St., 207; *Hawver v. Whalen* (Ohio), 14 L. R. A., 828, and editor's note; *Thomas v. Harrington,* 72 N. H., 45; 65 L. R. A., 742, and editor's note; *Louisville and N. R. Co. v. Tow* (Ky.), 66 L. R. A., 941, and note. In *Wetherbee v. Partridge,* 175 Mass., 185, the conclusion of the Court is thus stated in the headnote: "At the trial of an action for injuries to the plaintiff's property by the blasting of rocks upon adjoining land of the defendant, what the defense relied on was that the work was done by an independent contractor. The contract contemplated that blasting would be done, and the place where it was done was within three or four feet of the line between the plaintiff's and the defendant's land, and about eight or nine feet from the plaintiff's house: *Held,* that it is plain that performance of the contract would do the damage complained of unless it was guarded against, and that the defendant was bound to see that due care was used to prevent harm."

In the present case, from the evidence of the defendant, it was plain that performance of the contract would injure the plaintiff. The defendant, by its own servants, had first attempted to perform the work subsequently included in its contract with Shea, the independent contractor, and the injury to plaintiff was made plain; the independent contractor prosecuted the work in the same manner as the defendant had done and testified it could be done in no other way, and he produced like results to the plaintiff. It, therefore, in our opinion, results from the facts of this case that whether we follow the New York rule (which this Court in *Davis v. Summerfield, supra,* declined to follow, and the Massachusetts Court in *Wetherbee v. Partridge, supra,* also declined to follow), or ac-

cept the doctrine of the cases cited, we must reach the conclusion that the defendant is liable under the evidence in this case.

The sole remaining question to be determined is whether plaintiff, as administrator of his wife, can recover damages for her wrongful death, or is he prevented because, as husband, he is entitled to her earnings and she can accumulate nothing and is valueless to her estate. We cannot yield our assent to this argument of the defendant; we are not prepared to so interpret our law that, under Lord Campbell's act, all the wives in the State could meet with a tortious and wrongful death, and yet, because the husbands are entitled to their earnings, the issue of damages must be answered, "Nothing." Nor can the defendant escape liability because the particular form of injury was not foreseen. "While the defendant could not foresee the exact consequence of his act, he ought, in the exercise of ordinary care, to have known that he was subjecting plaintiff and his family to danger, and to have taken proper precautions to guard against it." *Kimberly v. Howland,* 143 N. C., 398; *Hudson v. R. R.,* 142 N. C., 198; *Drum v. Miller,* 135 N. C., 208; *Sawyer v. R. R.,* 145 N. C., 24; *Rolin v. Tobacco Co.,* 141 N. C., 300.

A careful examination of the record and the brief of the learned counsel of the defendant has failed to discover to us any reversible error, and the judgment is affirmed.

No error.