TITLE GUARANTY & SURETY CO. v. SLINKER.

No. 3787.  Opinion Filed September 15, 1914.

(143 Pac. 41.)

1. CORPORATIONS — Foreign Corporation — Action Against—Service—Appointment of Agent—"Doing Business." As to a Pennsylvania corporation, engaged in the business of writing surety bonds in the Indian Territory prior to statehood, and which, at the advent of statehood, withdrew its agents from the state and did not solicit or write any new bonds in Oklahoma, but continued to collect the annual premiums due on bonds executed prior to that time, and continued such bonds in force and effect, and which had no service agent in the state of Oklahoma upon whom service of process might be made in actions against it, held, that such foreign corporation was "doing business in the state of Oklahoma," within the meaning of section 2 of chapter 26, Sess. Laws 1910-11, and in an action upon a guardian's bond executed in the Indian Territory, commenced in the courts of Oklahoma by a citizen of the state, service of summons was properly made upon the Secretary of State of the state of Oklahoma, as provided in the above statute.

2.    CONSTITUTIONAL LAW—Corporations—Foreign Corporations—
      Process—Due Process—Equal Protection.    Section 2 of chapter
      26, Sess. Laws 1910-11, does not violate the provisions of the state
      and United States Constitutions guaranteeing to such foreign
      corporation due process of law, or deny to it the equal protec-
      tion of the law.

3.    GUARDIAN AND WARD—Guardian's Bond—Liability for Prem-
      iums.    In such action it appeared that the annual premium on the
      bond in suit had not been paid for three years, and judgment
      was prayed for the amount of such premiums.    Held, that the
      estate of the minor was liable for such premiums, and the de-
      fendant entitled to credit with the amount thereof upon the
      judgment rendered against it.

(Syllabus by Galbraith, C.)

*Error from County Court, Bryan County;*
*J. L. Rappolee, Judge.*

Action by Thomas Dewey Slinker, a minor, against J. I.
Slinker, his former guardian, and the Title Guaranty & Surety
Company, surety on the guardian's bond.    Judgment for plaintiff,
and the surety brings error.    Modified and affirmed.

See, also, 35 Okla. 128, 128 Pac. 696.

*Kyle & Newman, Ed C. Griesel,* and *Kenneth S. Murchison,*
for plaintiff in error.

*McPherren & Cochran,* for defendant in error.

Opinion by GALBRAITH, C.    This action was instituted in
the county court of Bryan county to recover from the principal
and surety on the guardian's bond the amount found due to the
ward from his guardian in an accounting had in the county court
of the county, where the guardianship was pending.    No service
being had on the principal, the action was dismissed as to him.
A jury being waived, the cause was submitted to the court for
trial, resulting in a verdict for the plaintiff.    The surety appeals
to this court.

It is first urged that the court below erred in overruling the
plea to the jurisdiction and motion of the surety to quash the
service made upon it.    In support of this assignment it is urged
that the surety was a foreign corporation, and not a citizen of

the state of Oklahoma, and was not, and had not been, engaged in doing business in the state, and had no agent residing in the state upon whom service of process could be made, and that since the summons issued in the case had been served upon the Secretary of State, as provided by chapter 26, Sess. Laws 1910-11, pp. 46, 47 and 48, the court did not acquire jurisdiction of the defendant, and that service made in this way was a denial to the surety of the due process of law, as guaranteed it by both the state and United States Constitutions.

The record shows that the surety is a Pennsylvania corporation, and it had been duly authorized to do business in the Indian Territory prior to statehood, and did, in pursuance of such authority, engage in business in that territory, and prior to statehood executed the bond in suit; that upon the advent of statehood the surety withdrew all of its agents from the state, except the one located at Muskogee, and that this agent was retained for the purpose of collecting premiums on bonds that had been· executed prior to statehood, and did not have authority to execute any new bonds; that no attempt was made by the surety to have the bonds canceled that had been executed, but that the same were continued in force and the annual premiums collected thereon; that it did not solicit or execute any new bonds in Oklahoma after statehood.

The question arising upon this state of facts is: Was the surety engaged in doing business in the state of Oklahoma, within the meaning of the above statute, authorizing service to be made on foreign corporations, failing to appoint and maintain service agents in the state, upon the Secretary of State in actions accruing to citizens of the state entered into with such foreign corporation? We think it was doing business in the state within the meaning of this statute, since ·its contracts of insurance were continued in force after statehood, and it continued to collect the premiums due thereon as they matured.

In *Connecticut Mut. L. Ins. Co. v. Spratley*, 172 U. S. 602, 19 Sup. Ct. 308, 43 L. Ed. 569, Mr. Justice Peckham, speaking for the Supreme Court of the United States on this question, says:

"We think the evidence in this case shows that the company was doing business within the state at the time of this service of process. From 1870 until 1894 it had done an active business throughout the state by its agents therein, and had issued policies of insurance upon the lives of citizens of the state. How many policies it had so issued does not appear. Its action in July, 1894, in assuming to withdraw from the state, was simply a recall of its agents doing business therein, the giving of a notice to the State Insurance Commissioner, and a refusal to take any new risks or to issue any new policies within the state. Its outstanding policies were not affected thereby, and it continued to collect the premiums upon them and to pay the losses arising thereunder, and it was doing so at the time of the service of process upon its agent."

And further:

"It cannot be said with truth, as we think, that an insurance company does no business within a state unless it have agents therein who are continuously seeking new risks and it is continuing to issue new policies upon such risks. Having succeeded in taking risks in the state through a number of years, it cannot be said to cease doing business therein when it ceases to obtain or ask for new risks or to issue new policies, while at the same time its old policies continue in force and the premiums thereon are continuously paid by the policy holders to an agent residing in another state, and who was once the agent in the state where the policy holders resided. This action on the part of the company constitutes doing business within the state, so far as is necessary, within the meaning of the law upon this subject."

To the same effect are *Mutual Reserve Fund Life Ins. Co. v. Phelps,* 190 U. S. 147, 23 Sup. Ct. 707, 47 L. Ed. 987; *Mutual Reserve Fund Life Ins. Co. v. Birch,* 200 U. S. 612, 26 Sup. Ct. 752, 50 L. Ed. 620; *Commercial Mut. Accident Co. v. Davis,* 213 U. S. 245, 29 Sup. Ct. 445, 53 L. Ed. 782. Upon the foregoing authorities there can be no question about the surety, the Title Guaranty & Surety Company, being engaged "in doing business" in Oklahoma at the time the service complained of was made in this case, and that the Oklahoma statute above referred to authorizes the service to be made upon it by serving the summons on the Secretary of State of the state of Oklahoma, as was done in this instance.

The further question arises: Was this statute in violation of the provisions of the state and federal Constitutions guaranteeing to the surety due process of law, and a denial to it of the equal protection of ' the law? We think not. In *St. Mary's Franco-American Petroleum Co. v. West Virginia*, 203 U. S. 183, 27 Sup. Ct. 132, 51 L. Ed. 144, Chief Justice Fuller, speaking for the court on a similar question, said:

"It is argued that the act of February 22, 1905, is invalid under the fourteenth amendment, in that it deprives the company of liberty of contract and property, without due process of law, and denies it the equal protection of the laws. But, in view of repeated decisions of this court, the contention is without merit. The state had the clear right to regulate its own creations, and, *a fortiori,* foreign corporations permitted to transact business within its borders. In this instance it put all nonresident domestic corporations, which elected to have their places of business and works outside of the state, and all foreign corporations coming into the state, on the same footing in respect of the service of process, and the law operated on all these alike. Such a classification was reasonable and not open to constitutional objection."

See, also, *Mutual Reserve Fund Co. v. Phelps,* 190 U. S. 147, 23 Sup. Ct. 707; *Northwestern Life Ins. Co. v. Riggs,* 203 U. S. 243, 27 Sup. Ct. 126, 51 L. Ed. 168, 7 Ann. Cas. 1104; *Orient Ins. Co. v. Daggs,* 172 U. S. 557, 19 Sup. Ct. 281, 43 L. Ed. 552.

We conclude that the court below did not err in overruling the plaintiff in error's plea to the jurisdiction and motion to quash service.

It appears that J. I. Slinker was on the 15th day of September, 1904, by the United States Court for the Central District of the Indian Territory, appointed guardian of the person and estate of Thomas Dewey Slinker, a minor, and on said day filed in said court the bond in suit, and that the same was duly approved, and he filed his annual report with said court, as such guardian, for the years 1905, 1906, and 1907, and that these reports were examined by the probate clerk of said court and O. K.'d, but no order of court was entered approving the same; that in 1908 the guardian filed his report in the county court of Bryan county and the same was approved; that on the 1st day of April, 1909, by

order of the probate court of Bryan county, J. I. Slinker was removed as guardian of Thomas Dewey Slinker, and his letters of guardianship revoked, and he was ordered to file in said court his final report as guardian; that he failed and refused to do this; that prior to September, 1909, A. Neeley was duly appointed guardian of the estate of Thomas Dewey Slinker, and on September 21, 1909, joined by Lizzie Slinker, the mother of the minor, filed in the county court of Bryan county a petition for final report and accounting against J. I. Slinker, and prayed that citation be issued directed to said Slinker, requiring him to appear in said court and make a final report and accounting of the affairs and guardianship of said minor; that citation was duly issued upon the said petition, and personal service was made thereof on said J. I. Slinker; that he did not appear in response to said citation, but made default therein, and on the 2d of December, 1909, the county court of Bryan county settled the account of J. I. Slinker, as guardian, recasting and rendering the same, finding said guardian indebted to his ward in the sum of $476.42; that execution was issued against J. I. Slinker for the recovery of the amount found due and returned wholly unsatisfied; that afterwards this action was instituted in the county court of Bryan county to recover said amount, and the judgment appealed from rendered.

It is complained that the county court of Bryan county had no authority to recast and render the account of J. I. Slinker, as guardian, upon the hearing had in pursuance of the citation issued upon the petition of Neeley, his successor as guardian of said ward. This question might have been properly raised at the hearing had in pursuance of the citation, but Slinker made default at the hearing and his accounts were examined and recast without objection, and the finding and judgment entered thereon was not appealed from, and therefore became final, and such judgment could not be attacked collaterally in the instant case, being a suit on the guardian's bond. The court issued the citation upon the petition, as it was authorized to do by the statute, and personal service was made of the citation upon J. I. Slinker, and the court, having jurisdiction of the subject-matter, thereby acquired juris-

diction of the person of said J. I. Slinker, and had authority to enter the judgment it did in that proceeding, and that judgment, not having been appealed from, became final and was binding upon the principal as well as the surety on the guardian's bond. *Southern Surety Co. v. Burney*, 34 Okla. 552, 126 Pac. 748, 43 L. R. A. (N. S.) 308; *Title Guaranty & Surety Co. v. Slinker*, 35 Okla. 128, 128 Pac. 696.

This assignment, as well as the others attempting to raise for consideration the action of the county court taken in pursuance of the citation, cannot be considered in the instant case for the reasons above set out.

The seventh assignment is as follows:

"The court erred in refusing to render judgment for the defendant in the sum of $18 for premiums due upon guardian's bond."

It appears that the premium on the bond in suit had not been paid since September 16, 1908, and that the annual premium on the bond was $6. The answer set out that the surety was entitled to credit for $18 for three years' premiums, and prayed for judgment in this sum. It is argued against this claim that there is no privity of contract between the surety and the ward, and that, while the surety would have a claim for these premiums against the guardian, it had no claim for them against the minor and his estate. This contention cannot be sustained. The bond in suit did not run to the guardian, but to the United States of America, as the statute in force in the Indian Territory provided. The ward, having commenced the action to recover on the bond on account of the guardian's default, necessarily asserted the legality of the bond and its binding force and effect, and, having done so, cannot escape, and should not be relieved from, paying the annual premiums which were stipulated to be paid as the consideration for the bond remaining in force and effect, and the county court of Bryan county was in error in not so holding and allowing this credit. This assignment was well taken, and should be sustained. The cause, however, should not be reversed and remanded on this account, since the error can be corrected here.

We find that the judgment rendered against the surety should be credited with the aggregate premiums due upon the bond for three years, to wit, $18, and that when so credited the judgment appealed from should be affirmed, and that the costs of the appeal should be equally divided between the parties thereto.

By the Court: It is so ordered.