## KAW BOILER WORKS v. FRYMYER et al.

No. 13109—Opinion Filed April 22, 1924.

Rehearing Denied June 24, 1924.

**1. Corporations — Foreign Corporations—Process—Constructive Service—Statute.**

Section 5442, Comp. Stat. 1921, providing for constructive service, in cases against foreign corporations engaged in business in this state, contains ample provisions reasonably calculated to bring knowledge of the action to the notice of the defendant as required in the application of the rules of due process of law.

**2. Same—Departure of Corporation from State After Transaction Involved—Effect.**

The provision of section 5442, supra, applies to actions following from business transactions of foreign corporations in the state, instituted after the corporation discontinues its business and departs from the state. If the corporation does not appoint an agent for service, the Secretary of State continues as service agent for process in such actions, as fully as if the corporation was then engaged in business in the state.

**3. Same—Service on Secretary of State—Sufficiency.**

The return of service on the Secretary of

State is good, unless it is made to appear in the action by the defendant, or otherwise, that the corporation has appointed an agent as provided by law on whom process can be served.

#### 4. Master and Servant—Relation of Independent Contractor—Test.

One of the tests for determining whether the contract of employment creates the relation of independent contractor, or that of principal and agent, is whether the employer retained or has the right to control the mode or manner in which the work is to be done.

#### 5. Same—Liability for Injuries to Servants of Contractor.

The employer is liable for injuries to the employes of the independent contractor, engaged in work on the premises of the former, if the injury suffered is the result of the ordinary and usual manner of doing such work.

#### 6. Same—When Master not Liable.

If the employer of the independent contractor furnishes to the latter reasonably safe premises, as measured by the usual manner of doing the work, the employer is not liable to the servants of the contractor for injury. If, under such conditions, injury results to the employes, it will be deemed the negligence of the contractor.

#### 7. Same—When Master Liable.

If the employer negligently permits a change in the conditions of his premises, which subjects the employes of the contractor to injury in the usual course of doing the work, he will be liable.

#### 8. Same—When Contractor Liable.

If the contractor had notice of the changed conditions, prior to the accident or could have discovered the threatened dangers to his employes by the exercise of ordinary care, in time to have avoided the injury, then he will be liable.

#### 9. Same—Action for Injuries—Burden of Proof—Negligence and Causal Connection.

The burden is on the plaintiff to prove by a fair preponderance of the evidence, acts of negligence by the defendant, having a causal effect in producing or contributing to the happening of the accident, which results in the injury suffered by the plaintiff. The causal effect may be shown by circumstantial evidence of existing conditions, which are reasonably calculated to contribute to or result in the accident.

#### 10. Same—Several Liability of Two Defendants—Acquittal of One—Effect.

If the action of plaintiff against two defendants is several, the acquittal of one of the defendants by trial does not discharge the other defendant.

#### 11. Death—Action for Wrongful Death of Son—Elements of Damage—Evidence.

In an action by the father for the wrongful death of his adult son, the measure of damages is the pecuniary loss suffered by the plaintiff. The loss is determined by the sums of money and the acts and services of a pecuniary value which the son would likely have contributed to the aid and support of the parent during the lifetime of the latter, except for the wrongful death. In arriving at the loss, the physical condition, the age, and financial condition of the plaintiff should be taken into consideration.

#### 12. Same—Evidence of Parents' Financial Condition.

It was error for the court to exclude evidence from the jury of the financial condition of the father.

#### 13. Master and Servant—Negligence of Master—Evidence as to Condition of Appliances.

It was error in this case for the court to permit witnesses to testify that the manner in which the condenser box was constructed made it dangerous to the employes of the defendant. The witnesses should have described the condition of the box as it existed. It was then for the jury to find from the evidence if there was any negligence in this respect and who was responsible.

#### 14. Same—Evidence of Repairs After Accident.

It is error for the court, in an action for damages, to permit the plaintiff to show changes and repairs made by the defendant of the machinery and premises involved, after the accident occurred.

#### 15. Insufficiency of Evidence.

Record examined; held, to be insufficient to support judgment against the Kaw Boiler Works; further held, that as plaintiff did not file a cross-appeal from the judgment in favor of the Chickasaw Refining Company, it became final.

(Syllabus by Stephenson, C.)

Commissioners' Opinion, Division No. 4.

Error from District Court, Carter County; B. C. Logsdon, Judge.

Action by John L. Frymyer et al. against the Kaw Boiler Works, a corporation, and Chickasaw Refining Company, a corporation, for wrongful death. Judgment for plaintiff, and for Chickasaw Refining Company. Defendant Kaw Boiler Works brings error. Affirmed in part and reversed in part.

Twyford & Smith, Leo G. Mann, and Samuel A. Harper, for plaintiff in error.

Moore & West, for defendant in error. John L. Frymyer.

Opinion by STEPHENSON, C. The plaintiff prosecutes this action as the next of kin of Burwell Frymyer, deceased, against the Kaw Boiler Works, a corporation, and the Chickasaw Refining Company, a corporation, for the alleged wrongful death of his son. The son was about the age of 21 years at the time of his death. The Kaw Boiler Works is a foreign corporation and was engaged in the construction of a condenser box, as an independent contractor, for the Chickasaw Refining Company, at Ardmore, Okla. Plaintiff's son was an employe of the Kaw Boiler Works and assisting in the construction of the condenser at the time of his death, which resulted from a fire near the tank. In the trial of the cause judgment went for the plaintiff and against the Kaw Boiler Works. The Chickasaw Refining Company recovered judgment in the trial. The Kaw Boiler Works has appealed the cause to this court and assigns various proceedings had in the trial court as error for reversal:

(1) Error in assuming jurisdiction of the action.

(2) Error in overruling the motion of defendant to quash the summons and its return.

(3) Error in overruling defendant's demurrer to plaintiff's amended petition.

(4) Error in refusing to direct a verdict in favor of the defendant.

(5) Error in admitting certain incompetent evidence and in refusing competent evidence offered by the defendant.

Summons in this cause for the Kaw Boiler Works was served on the Secretary of State. The defendant contends that section 5442, Comp. Stat. 1921, is invalid and insufficient to support the service of summons in this case, as the Secretary of State was not required to bring notice of the action to the defendant. The validity of this section was before the court in the case of Tidal Gty. & Surety Co. v. Slinker, 42 Okla. 811, 143 Pac. 41. The court held the section to be valid for the purposes for which it was enacted. The defendant states that the statute was attacked in the Slinker Case on the ground that the state was without authority to designate one of its officers as service agent for foreign corporations and not on the ground herein presented. The defendant says that the authorities holding a similar statute invalid were not called to the attention of the court in the first appeal. The defendant does not question the right of the Legislature to make provisions for constructive service on foreign corporations engaged in business pursuits in the state. The right of the state to designate the Secretary of State as service agent for such corporations, if the latter do not name their own service agents, is not questioned. In substance, it is the contention of the defendant that the statute does not make reasonable provision for notice of a suit to be brought to the attention of the defendant. For the reason given, the defendant says the statute denies to foreign corporations due process of law in the trial of causes in our jurisdiction, and for that reason is null and void. As proof of the existing vice in the statute, it is said by the defendant, by its provisions, a judgment may go against the defendant without knowledge of the suit coming to its attention, and that it was by mere chance notice of the instant case was received by the defendant. While this may be true, it does not necessarily destroy the act. So long as the Legislature makes provisions for constructive service in actions in personam, under carefully drawn acts, occasional judicial loss of property may be suffered by the adverse party without notice of the action. However, the state may rightfully provide for constructive service on resident defendants and foreign corporations engaged in business in the state in actions in personam. Pennoyer v. Neff, 93 U. S. 714; Barkman v. Hopkins, 11 Ark. 157; Betamcourt v. Eberlin, 71 Ala. 461; Bickerdike v. Allen, 157 Ill. 95; Harrymon v. Roberts, 52 Md. 65. The Supreme Court of the United States prescribes the following standard for testing the sufficiency of a legislative act providing for constructive service on the defendant in the state where the action is instituted. "The criterion is not the possibility of conceivable injury, but the just and reasonable character of the requirements having reference to the subject with which the statute deals." American Land Co. v. Zeiss, 219 U. S. 67, 31 Sup. Ct. 207, 55 L. Ed. 82. If the legislative act providing for constructive service embodies provisions reasonably calculated to bring notice of the suit to the attention of the defendant in time to answer the complaint before the day of default, it will be deemed valid. If the provisions for bringing notice of the suit to the attention of the defendant are in keeping with the natural sense of justice reflected by our jurisprudence applying to judicial inquiries, which guarantees to the defendant his day in court, with reasonable opportunity to make his defense before the pronouncement of judgment, the legis-

lative act will be deemed valid. LaFayette Ins. Co. v. French, 18 Howard, 404, 15 L. Ed. 451; Conn. Mutual Life Ins. Co. v. Spratley, 172 U. S. 602, 43 L. Ed. 569; N. Y. L. E. & W. Ry. Co. v. Estill, 147 U. S. 501, 37 L. Ed. 292; Wilson v. Seligman, 144 U. S. 41, 36 L. Ed. 338; N. Mo. R. Co. v. Akers, 4 Kan. 453, 16 Am. Dec. 183; Reyer v. Odd Fellows Fraternal Accident Ass'n., 157 Mass. 367, 32 N. E. 469; Farrell v. Oregon Gold Mining Co., 31 Ore. 463 49 Pac. 876; Klopp v. Creston City Gty. Water Works Co., 34 Neb. 808, 52 N. W. 819.

The right of a foreign corporation to enter a state to engage in business depends on the consent of the state. The state may prescribe the conditions under which it will admit such corporations to engage in business pursuits within its borders. It is within the right of the state to require foreign corporations to submit to the trial of actions in its courts arising in the course of the corporation's business in the state. In order to give effect to such a requirement, the state may provide for constructive notice in personal actions instituted in its courts against defendant corporations by service of process on some state officer designated by the state, or such person as the corporations may designate as its own service agent. A compliance by the corporation with the conditions required by the state, in order for it to be entitled to engage in business therein, is to be deemed a condition of the permission. A corporation which enters our state to engage in business is deemed to consent to all required conditions, which includes consent to accept the agent designated by the state for service, as fully as if such agent had been appointed by the corporation. Pennoyer v. Neff, supra; St. Clare v. Cox, 106 U. S. 350, 27 L. Ed. 222; Barrow Steam Ship Co. v. Kane, 170 U. S. 100, 42 L. Ed. 964; Smith v. Empire State-Idaho Mining & Dev. Co., 127 Fed. 462; Central Grain Stock Exc. v. Board of Trade of Chicago, 125 Fed. 463; Vulcan Const. Co. v. Harrison, 95 Ark. 588, 130 S. W. 583; Thomas v. Placerville Gold Quartz Mining Co.,65 Cal. 600, 4 Pac. 641, 22 A St. Rep. 433; Wilson v. Martin-Wilson Automatic Fire Alarm Co., 149 Mass. 24, 20 N. E. 318; Armstrong v. N. Y. and H. R. Co., 129 Minn. 104, 151 N. W. 917; Shields v. Union Cent. Life Ins. Co., 119 N. C. 380, 25 N. E. 951; St. L. & S. F. Ry. Co. v. DeFord, 38 Kan. 299, 16 Pac. 442. However, the corporation would not be bound by any invalid or unlawful conditions, as the corporation, by its entry into the state, is charged only with constructive notice of the valid provisions of our law.

The portion of section 5442, supra, called into question by the defendant is in the following language:

"Any foreign corporation, doing business in the state of Oklahoma, having failed to appoint an agent upon whom service of summons or other process may be had, * * * any person now or hereafter having any cause of action against any foreign corporation may file suit against said foreign corporation in any county in the state and service of summons or any process upon the Secretary of State shall be sufficient to give jurisdiction of the person to any court in this state having jurisdiction of the subject-matter."

We think this section contains reasonable provisions to enable a foreign corporation to be advised of the institution of a suit against it, if the corporation desires to take advantage of the opportunity offered to it by the state to name its own service agent. Title Gty. & Surety Co. v. Slinker, supra; Olender v. Crystalline Mining Co., 149 Cal. 482, 86 Pac. 1082. A contrary view was first held, in considering a like statutory provision, by the United States District Court sitting in Louisiana, in Simon v. So. Ry. Co., 184 Fed. 959, for the reason the act did not require the Secretary of State to transmit notice of the suit to the defendant. The Circuit Court of Appeals in reviewing the appeal sustained the judgment of the trial court, but placed its decision on the ground that the summons was served on the Assistant Secretary of State, instead of the Secretary of State as required by the act. 195 Fed. 56. The cause went to the Supreme Court on appeal and is reported in 236 U. S. 115. The Supreme Court affirmed the judgment but not on the grounds placed by the lower courts. In the course of the opinion affirming the judgment the court said:

"The broader the ground of the decision here, the more likelihood there will be of affecting judgments held by persons not before this court. We, therefore, purposely refrain from passing upon either of the propositions decided in the courts below, and without discussing the right to sue on a transitory cause of action and serve the same on an agent voluntarily appointed by the foreign corporation, we put the decision here on the special fact, relied on in the court below, that in this case the cause of action arose within the state of Alabama, and the suit therefor, in the Louisiana court, was served on an agent designated by a Louisiana statute.

"Subject to exceptions, not material here, every state has the undoubted right to pro-

ride for service of process upon any foreign corporations doing business therein; to require such companies to name agents upon whom service may be made; and also to provide that in case of the company's failure to appoint such agent, service, in proper cases, may be made upon an officer designated by law. Mutual Reserve Ass'n v. Phelps, 190 U. S. 147; Mutual Life Ins. Co. v. Spratley, 172 U. S. 603."

A United States District Court sitting in California, considering a like statutory provision in the case of Knapp v. Bullock Tractor Co., 242 Fed. 543, and a like court, sitting in Nevada, in King Tonopah Mining Co. v. Lynch, 232 Fed. 485, held the statute to be invalid for the reason given by the court sitting in Louisiana.

The defendant insists that the motion to quash the summons and return of service should have been sustained, as the return of service did not recite the failure of the defendant to appoint a service agent, which it claims was necessary, in order to give plaintiff the right to have service on the Secretary of State. A similar return of service was before this court and was approved in the case of Municipal Paving Co. v. Harring, 50 Okla. 470, 150 Pac. 1067.

The defendant further says the court was without jurisdiction of this defendant for the reason that neither the petition nor the return of service showed that the defendant was engaged in business in the state at the time the action was instituted. The petition discloses that plaintiff's son lost his life by accident while in the employ of the defendant, which was constructing a condenser at Ardmore, Okla. The cause of action involved herein arose during the course of the defendant's business in the state. For alleged wrongs done by a foreign corporation, in the course of its business, while in the state, it will be subject to suits for relief in actions in personam, commenced after the corporation has terminated its business and departed from the state. If the corporation has failed to appoint an agent for service, the Secretary of State will continue as service agent for process in such actions, as fully and effectively as if the corporation was then engaged in business in the state. Mutual Reserve Fund Life Ins. Ass'n v. Phelps, 190 U. S. 147, 47 L. Ed. 987; Conn. Mutual Life Ins. Co. v. Spratley, 172 U. S. 602, 43 L. Ed. 569; Hill v. Empire State Idaho Mining & Dev. Co., 156 Fed. 797; Gross v. Nichols, 72 Ia. 239, 33 N. W. 653; Meixwell v. American Motor Car Sales Co., 181 Ind. 153. Ann. Cas. 1916D. 375. 103 N. E. 1071; Reese Lumber Co. v. Licking Coal & Lumber Co., 156 Ky. 723, 161 S. W. 1124; Fletcher

Cyclopedia Corporation, vol. 9, section 6046, page 10425.

The defendant complains of the action of the court in overruling its demurrer to plaintiff's amended petition. The petition was good as against a general demurrer.

Then follows the assignment of error based on the court's overruling the defendant's demurrer to plaintiff's evidence. These questions are largely determined by the status between the boiler works and the refining company, and the obligation owing by the companies to the employe, who lost his life in the accident. The boiler company was employed by the refining company to construct a metal condenser box in the refinery. The manner and method of doing the construction work was under the supervision of the boiler company. The refining company did not have anything to do with the manner of construction and was concerned only in the completed structure in accordance with the contract. This resulted in the status of employer and independent contractor between the two defendants. Producers Lumber Co. et al. v. Buller, 87 Okla. 172, 209 Pac. 738; Midland Oil & Gas Co. et al. v. Creel et al., 89 Okla. 23, 213 Pac. 852; Boswell v. Laird, 68 Am. Dec. 345; Good v. Johnston, 38 Colo. 440, 88 Pac. 439, 8 L. R. A. (N. S.) 896. The general rule of liability relating to the employer of an independent contractor is not changed because the independent contractor is making the improvement or doing the construction work on the premises of the employer. Boswell v. Laird, supra; Scammon v. Chicago, 25 Ill. 424, 79 Am. Dec. 334; Hoff v. Shockley, 122 Iowa, 720, 98 N. W. 573, 101 A. S. R. 289, 64 L. R. A. 538; Boomer v. Wilbur, 176 Mass. 482, 57 N. E. 1004, 53 L. R. A. 172. There are a number of exceptions to the general rule of liability of the employer, but the record in this appeal does not make it necessary to consider such exceptions. The employer of the independent contractor will be liable generally to third persons for injuries resulting from the doing of the work, which are the natural and probable consequences of the usual methods of performing such work. The employer is not answerable for injuries resulting to third persons in the course of the work, which are the result of negligence of the contractor. So. Ry. Co. v. Lewis, 165 Ala. 555, 51 South 746, 138 A. S. R 77; Williams v. Fresno Canal Co., 96 Cal. 14, 30 Pac. 961, 31 A. S. R. 172; Hunter v. So. Ry. Co., 152 N. C. 682. 68 S. E. 237, 136 A. S. R. 854, 29 L. R. A. (N. S.) 851. This rule rests upon the principles that the employer has the right to rely on the pre-

sumption that the contractor will discharge his legal duties owing to his employes and third persons, and that the procurer of a tort is answerable as the tort-feasor. De-Palma v. Weinman, 15 N. M. 68, 103 Pac. 782, 24 L. R. A. (N. S.) 423. So the liability of the refining company to the decedent ended when it furnished a reasonably safe place for the contractor to perform the services, if it did so, and continued the premises in a reasonably safe condition at all times thereafter for the construction of the condenser, in the way and manner such work is ordinarily done. If, after the boiler company commenced the construction of the condenser box, and during the time the plaintiff's deceased son was in the employe of the boiler company, the refining company negligently permitted parts or portions of its refinery machinery to become defective, so as to permit the escape of gas which might ordinarily become ignited in the course of the construction of the condenser, the refining company would be liable for damages. If the boiler company had actual notice of a defective condition for a sufficient time prior to the accident to have protected its employes, or if such condition had continued sufficiently long to be observed by the boiler company in the exercise of ordinary care, then the boiler company would be liable, in addition to the refining company. The liability of the refining company would rest on its negligence in permitting the escape of the gases which resulted in the accident. The liability of the boiler company would rest on its actual notice, if any, of the defective condition of the machinery and the escaping gases. If the defective condition, if any, and escaping gases had continued for such a period of time as would make it reasonably probable the boiler company could have discovered the dangers, by the exercise of reasonable care, it would be liable in that event. Lisle et al. v. Anderson, 61 Okla. 68, 159 Pac. 278; Hoppe v. Winona, 113 Minn. 252, 129 N. W. 577, Ann. Cas. 1912A, 247, 33 L. R. A. (N. S.) 449. If an accident results in injury to a hired person by negligence of an employer, concurring with the negligence of his independent contractor, the employer will be held liable. In such an instance the independent contractor will also be liable. Consolidated Ice Machinery Co. v. Keifer, 134 Ill. 481, 25 N. E. 799, 23 A. S. R. 688, 10 L. R. A. 696.

The boiler company was constructing a condenser steel box, placed on supports about 20 feet in height from the floor, at the time the accident occurred. The height of the condenser box was about 8 or 9 feet. There was another condenser box sitting on sup-

ports of equal height to those of the box under construction. There was a space of about 18 or 20 inches between the two boxes, which enabled the employes to do riveting work on the new box, standing between the two. The old box was about 12 by 20 feet, and 4 or 5 feet in height. The old box contained coils of pipe and water for condensing gas vapors passing from the distillation of the crude oil. Water was continuously running into the box at the east end and passing out through an opening at the west end of the box, on the level with the water in the box. The plaintiff alleged and proved that oil had accumulated and was on top of the water in the old condenser box. The accident occurred about 10 o'clock in the morning. The decedent and witness Long were standing on a support resting on the said deceased Burwell Frymyer. was shall was standing on the top of the old condenser box receiving bolts, heated to a white heat, from the inside. and over the top of the new box, and passing the rivets to the decedent and witness Long, who were situated about 4 or 5 feet below the top of the old box. The decedent and witness Long then placed the heated rivets into opening in the new box and held what is known as a back-up hammer against the bolt, to be bradded from the inside of the box. We will let the witness Marshall tell of the accident in his own language:

"Q. Where was the first place you saw fire? A. Down between the two boxes when I handed Long this rivet, when I seen the flash. Q. It wasn't over there in this box (indicating old box)? A. No, sir. Q. It was in the open space (between old and new box)? A. Yes, sir. Q. It was ignited from the hot rivet in some way; it caught from the hot rivet? A. Yes, sir. Q. Somewhere down there between the boxes? A. Yes, sir. Q. Are you sure of that, that it caught from that hot rivet down in between them? A. Yes, sir: I seen the flash. Q. What did you do with the hot rivet, hand it to Frymyer or Long? A. Long; he was between the two boxes and I could not reach from where I was down far enough to put the rivet in the hole and I handed Mr. Long and he stuck it in the hole and would hold the hammer against it. Q. Is that the way you did every time? A. Yes, sir. Q. Did you drop that rivet? A. No, sir. Q. Did Mr. Long drop it? A. No, sir; he had done taken the rivet and I seen the flash after he taken hold of it. Q. You don't know what became of the rivet? A. No, sir; it was found down on the ground the next morning."

The plaintiff for his cause of action alleged that the refining company had permitted the coils of pipe in the old condenser box to become so defective as to allow oil

and gases to escape through them, and that the escaped oil remained on top of the water in the boxes. The portion of the petition describing the happening of the accident is in the following language:

"That on or about the 6th day of October, 1920, while deceased, Burwell Frymyer, and others were working upon said tank aforesaid, the gases arising off of and from the defective tank near the place where the said deceased Burwell Frymyer was working, became ignited and the oil collected and remaining on said tank aforesaid, caused great flames and smoke to come up, over and around the said Burwell Frymyer, deceased."

The petition and evidence make it appear that the ignition of gases was the direct cause of the accident, and the accumulated oil in the old condenser box was mainly, the cause of the burns which resulted in the death of plaintiff's son. After the ignition of the gas, it is apparent from the evidence that the decedent came from his position below the box to the top of the old condenser box, and fell inside the box into the hot water, where the oil had become ignited from the gas. The decedent by his own efforts escaped to the top of the box and fell from there to the ground, a distance of about 20 feet. The decedent lived about 4 hours after the accident. The ignition of the gas is a very natural consequence from coming in contact with a bolt at white heat. The decedent and employes working with him and who were witnesses in this case had been engaged in this work at least 8 or 10 days prior to the time of the accident. The witnesses do not testify that gas was present about the condenser prior to the accident. It is not probable that gas in any quantity had passed, prior to the time of the accident, into the immediate vicinity of the employes doing the riveting work, as it is very likely ignition would have occurred from the heated bolts. If escaping gases about the premises of a refinery company are the natural and probable consequences of such work, it is not made to so appear by the evidence. If escaping gas about the refinery is not an ordinary occurrence in the operation of the plant, there is no evidence accordingly. If the refinery company had negligently, or otherwise, permitted gas to escape in the course of the operation of the plant on previous occasions, it would be competent evidence going to the question of the probability of the boiler company being able to anticipate in the exercise of ordinary care, that such an accident might occur as did in this case. Brazil Black Coal Co. v. Gibson, 160 Ind. 319, 66 N. E. 882, 98 A. S. R. 287. There is no evidence that the boiler company had notice of the escaping gas which became ignited, resulting in the accident. Nor is it shown by the evidence that the boiler company had notice of any defective condition of machinery or of the condition of any machinery which might result in gas escaping. In applying the foregoing rules of law to the relationship between the two defendants as employer and independent contractor, it is apparent that the liability, if any, is several, and not joint. The liability of the defendants, if any, to the plaintiff rests upon different grounds, hence any action the plaintiff may have against the two defendants is several. In the first instance, the brothers and sisters of the decedent were joined with this plaintiff. The court submitted only the right of the father to recover. The court submitted the question of the liability of the boiler company and the refining company to the jury, and the jury returned a verdict against the boiler company and for the refinery. The plaintiff has not filed a cross-appeal from the judgment for the refining company, which has now become final. In this appeal we are concerned only with the sufficiency of the proof to show liability of the boiler company. In applying the foregoing rules to the evidence, no breach of duty owing by the boiler company to the decedent is shown, which caused or contributed to the ignition of the gases. The burden is on the plaintiff to prove negligence on the part of the defendant by a fair preponderance of the testimony. The mere fact that an injury occurs carries with it no presumption of negligence. It is an affirmative fact for the injured party to establish that the defendant has been guilty of a breach of duty owing to the plaintiff, which contributed to, or produced, the injury suffered. St. L., & S. F. Ry. Co. v. Fick, 47 Okla. 530, 149 Pac. 1226; C., R. I. & P. Ry. Co. v. Tate, 57 Okla. 215, 156 Pac. 1182; Rogers v. R. G. W. Ry. Co., 32 Utah, 367, 90 Pac. 1075, 125 A. S. M. 876. However, all that is required of the plaintiff is to make it appear more probable that the injury resulted in whole or in part from the defendant's negligence than from any other cause. St. L. & S. F. Ry. Co. v. Rushing, 31 Okla. 231, 120 Pac. 973. The boiler company contends that the verdict in favor of the refining company automatically releases it from liability. The record herein establishes the relation of employer and independent contractor between the two defendants. The liability of the two defendants, if any, to the plaintiff is several. The joining of the two defendants in this action constituted a misjoinder of actions and parties defendant, but no complaint of this was made by either party. As the action of plain-

tiff against the defendants is several, the returning of a verdict in favor of one of the defendants did not operate to discharge his cause of action against the other defendant. The plaintiff may further proceed as if no action had been commenced against the refining company. If it were not that a retrial may be had in this case, we might disregard the errors relating to certain testimony offered and refused in the cause. Witnesses were permitted to testify, presumably, as experts that the condenser box as constructed was dangerous for the safety of the employes of the boiler company. On cross-examination one of the witnesses suggested that a pipe should have been inserted through the bottom of the box, to the top of the water in the box, in order to provide a passage way for the oil on top of the water to escape. In view of the state of the record as shown, the prejudicial nature of this testimony is made apparent without further comment. On the record, the introduction of this testimony was prejudicial to the rights of the boiler company. Fed. Oil & Gas Co. v. Campbell, 65 Okla. 49, 183 Pac. 894; Okmulgee Window Glass Co. v. Bright, 65 Okla. 53, 183 Pac. 898; Root v. Cudahy Packing Co. (Kan.) 129 Pac. 147. The witnesses should have detailed the manner of construction of the box, arrangement of the condenser pipes, and their condition, if out of the ordinary, and it was then for the jury to say whether or not there was negligence in this respect. A witness was permitted to testify that the use of the old condenser box was discontinued after the accident until the completion of the new condenser. This was error and prejudicial to the rights of this defendant under the proof and record in this case. The condenser box was under the control of the refining company. The fact that the operation was discontinued in no way tends to prove that this defendant was in any way responsible for the accident. M., K. & T. Ry. Co. v. Johnson, 34 Okla. 582, 126 Pac. 567; Shawnee Gas & Electric Co. v. Montesenbocker, 41 Okla. 454, 138 Pac. 790.

The plaintiff's right of recovery was confined to damages of a strictly pecuniary character. The recovery is not necessarily confined to the sums of money the decedent would probably have contributed to the plaintiff, except for his death. The jury may take into consideration the pecuniary value of any services or aid which the decedent might have contributed to the plaintiff in his support and maintenance. In determining the pecuniary loss to the plaintiff, the jury should take into consideration the health, age, and property, if any, owned by the plaintiff, and plaintiff's need for aid and support from the deceased son. The pecuniary condition of the plaintiff must necessarily have much to do with the aid and support which the son might ordinarily be expected to contribute to his father. Kale-Inla Coal Co. v. Ghinenli, 55 Okla. 289, 155 Pac. 606. As was said in the case of Potter v. N. C. Ry. Co., 21 Wis. 372, 94 Am. St. Dec. 549:

"If it had been proved that the pecuniary circumstances and health of the parents were such as to render it probable that they might need the services of the deceased, or aid from her, after she was twenty-one years of age, a foundation would have been laid for damages other than those resulting from the loss of her services during her minority. On the other hand, if the proof had shown that the parents were wealthy, there would have ordinarily been, it appears to us, no reasonable expectation to them of pecuniary benefit from the continuance of the life of the deceased beyond her minority."

Bond v. United Railways, 159 Cal. 270, 113 Pac. 366, 48 L. R. A. (N. S.) 687; Rogers v. R. G. W. Ry. Co., supra, 125 Am. St. Rep. 876; Crabtree v. M. P. Ry. Co., 86 Neb. 33, 124 N. W. 932, 136 A. S. R. 663.

The evidence discloses that the plaintiff owned a ranch of 160 acres on which he lived, located in Idaho. The defendant on cross-examination asked plaintiff to describe the improvements thereon. Plaintiff's attorney objected to the question, which was sustained by the court. The defendant followed this question by asking the plaintiff how much money he then had in the bank. A similar objection and ruling by the court followed. This was error. It was material for the jury to know these facts in order to arrive at the probable pecuniary loss suffered by the plaintiff in the death of his son.

It is recommended that the action of the court in dismissing decedent's brothers and sisters as parties plaintiff, and the judgment in favor of the refining company and against the plaintiff, be affirmed, as no cross-appeal has been filed by the plaintiff: and that the judgment rendered against the Kaw Boiler Works be reversed and remanded for further proceedings in accordance with the views herein expressed.

By the Court: It is so ordered.